1  X-PATENTS, a Professional Corporation
   JONATHAN HANGARTNER, Cal. Bar No. 196268
2  5670 La Jolla Blvd.
   La Jolla, CA 92037
3  Telephone:    858-454-4313
   Facsimile:    858-454-4314
4  Email:  jon@x-patents.com

5  Attorneys for Plaintiff and Counter-Defendant
   One Industries, LLC, and Third-Party Defendants
6  Ludovic Boinnard and Marc Blanchard

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11 ONE INDUSTRIES, LLC,                    Case No. 06cv1133 JAH(AJB)
   a limited liability company,
12                                         **MEMORANDUM OF POINTS AND**
                  Plaintiff,               **AUTHORITIES IN SUPPORT OF**
13                                         **MOTION FOR SUMMARY JUDGMENT**
        v.                                 **OF THE COUNTERCLAIMS AND**
14                                         **THIRD-PARTY CLAIMS OF JIM**
   JIM O'NEAL DISTRIBUTING, INC.,          **O'NEAL DISTRIBUTING**
15 a corporation,

16                  Defendant.             The Honorable John Houston
                                           [Complaint Filed:  May 25, 2006]
17 AND ALL RELATED COUNTERCLAIMS
   AND THIRD-PARTY COMPLAINTS              Date:  October 22, 2007
18                                         Time:  2:30 p.m.
                                           Crtm:  11
19

20

21

22

23

24

25

26

27

28
                                    -1-

1

# TABLE OF CONTENTS

2

3

I. INTRODUCTION ................................................................................................. 4

4

II. BACKGROUND ............................................................................................... 4

5

  A.   One Industries, LLC ................................................................................... 4
      1.   Introduction of New Logos in 1999 .......................................................... 5

6

      2.   One Industries' Helmet Line .................................................................... 6

7

      3.   Trademark Registrations ......................................................................... 7

8

  B.   Jim O'Neal Distributing, Inc. ..................................................................... 7
      1.   O'Neal's Trademarks .............................................................................. 8

9

      2.   O'Neal Trademark Registrations ............................................................. 9

10

  C.   Pre-Filing Communications ...................................................................... 10

11

  D.   Procedural History ................................................................................... 10

12

III. ARGUMENT ................................................................................................. 11

13

  A.   O'Neal Cannot Prove Infringement of its Trademarks as a Matter of Law ...................... 11

14

      1.   There is No Infringement of the O'NEAL mark as a Matter of Law ............................ 12

15

      2.   There is No Infringement of Any O or O' Mark as a Matter of Law ............................ 15

16

  B.   Trade Dress Infringement ........................................................................ 19

17

  C.   O'Neal's Unfair Competition Claim Fails For All of the Same Reasons ........................ 20

18

  D.   O'Neal's Cancellation Claims Must be Denied as a Matter of Law ................................ 21

19

  E.   One Industries Is Entitled to Recover its Attorney Fees and Costs .................................. 21

20

IV. CONCLUSION ............................................................................................... 23

21

22

23

24

25

26

27

28

MEMO OF POINTS & AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

3

**Cases**

4    *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979)........................................ 12
    *Brookfield Comme'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999)..... 12
5    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)............................................................... 11
    *Century 21 Real Estate v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) ................................... 12
6    *Chrysler Corp. v. Vanzant*, 44 F.Supp.2d 1066, 1068 (1999)...................................................... 12
    *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994) ......................................................... 11
7    *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 842-43 (9th Cir. 2002) ...................................................... 14
    *Dep't of Parks & Recreation v. Bazaar del Mundo, Inc.,* 448 F.3d 1118, 1124 (9th Cir. 2006).... 12
8    *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998)................... 19
9    *Fasa Corp. v. Playmates Toys, Inc.,* 108 F.3d 140, 143 (7th Cir. 1997) ....................................... 21
    *Fulkerson v. The Muter Co.,* 135 USPQ 379, 381 (T.T.A.B. 1962) ............................................. 15
10    *General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F. Supp. 716 (W.D. Mich. 1964)..... 15
    *In re Societa Ceramica Richard Ginori*, 137 USPQ 457 (T.T.A.B. 1963) ................................... 15
11    *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) ................................ 12
12    *Matthews v. Xerox Corp.*, 319 F. Supp. 2d 1166, 1170 (S.D. Cal. 2004)..................................... 11
    *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.,* 856 F.2d 1445, 1449 (9th Cir.1988)............... 17
13    *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir.1999).............................................. 14
    *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 756 (9th Cir. 2006) .......................................... 11
14    *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990) .......................................................... 11
15    *Scott Fetzer Co. v. Williamson*, 101 F.3d 549 (8th Cir. 1996)...................................................... 21
    *Steven W. Boney, Inc. v. Boney Services, Inc.,* 127 F.3d 821, 827 (9th Cir. 1997)....................... 21
16    *T.W. Elec. Serv. Inc. v. Pacific Elc. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).......... 11
    *Wang Laboratories, Inc. v. Mitsubishi Elec. Am., Inc.*, 860 F. Supp. 1448, 1450 (C.D. Cal. 1993)
17    ........................................................................................................................................................ 11

18    **Other Authorities**

19    3 McCarthy § 23:18................................................................................................................... 14

20

21

22

23

24

25

26

27

28

1

## I. INTRODUCTION

2      One Industries, LLC ("One Industries") filed this declaratory judgment action to clear its

3  name in the face of false and frivolous accusations of trademark infringement by Jim O'Neal

4  Distributing, Inc. ("O'Neal").  One Industries and third-party defendant Ludovic Boinnard

5  ("Boinnard") now file this motion for summary judgment seeking final relief in the form of a

6  judgment in their favor on all counterclaims and third-party claims, as well as a declaration of

7  non-infringement.

8

## II. BACKGROUND

9      This section will provide a brief overview of the relevant undisputed facts regarding the

10  parties, their products, their trademarks, and their pre-filing communications that give rise to

11  certain of the counterclaims and third-party claims asserted by O'Neal.

12  **A.      One Industries, LLC**

13      Plaintiff and Counterclaim-Defendant One Industries is a California limited liability

14  company that designs and sells motorcycle racing products and accessories.  Formed in 1997 by

15  Marc Blanchard and third-party defendant Ludovic Boinnard, the company initially sold graphic

16  kits, casual wear, and seat covers.  (Deposition of Marc Blanchard ("Blanchard Depo.") at 8:9-

17  10:23,[1] Exh. A to Declaration of Jonathan Hangartner ("Hangartner Decl.")).  Graphic kits are

18  very durable, high-quality decals designed for specific brands of motorcycles that customers apply

19  to their motorcycles to give them a particular look.  (*Id.* at 13:12-20.)

20      Before founding One Industries with Mr. Boinnard, Mr. Blanchard was a premier graphic

21  designer in the motocross industry for many years.  (*Id.* at 6:10-8:8; Deposition of Ludovic

22  Boinnard ("Boinnard Depo.") at 23:21-24:5, Exh. B. to Hangartner Decl.).  Mr. Blanchard's

23  artistic talents immediately set One Industries apart, and the company quickly developed a

24  reputation for cutting edge design and high quality products.  (*See, e.g.,* Article entitled "Number

25  One" from February 2007 issue of Dirt Bike Rider magazine, Exh. C to Hangartner Decl.).  From

26  the start, One Industries sought to stand apart from its competitors by pushing the design envelope,

27

28      [1]      All depositions references are cited as "page:line – line" or "page:line – page:line".

-4-

1  rather than simply following industry trends.  This approach continues to this day, and can be seen

2  in One Industries' product catalogs.  (*See* Excerpts from One Industries' catalogs, Exhs. D – M to

3  Hangartner Decl.).

4      1.    Introduction of New Logos in 1999

5      In 1999, Messrs. Blanchard and Boinnard asked a designer named Jerome Coste to develop

6  a new logo for the company.  (Blanchard Depo. at 28:22-30:8, Exh. A to Hangartner Decl.).  Mr.

7  Coste developed nine (9) different pairs of conceptual logos, including the following set:

8
9  
10

11  (Exh. N to Hangartner Decl.).  The concept for this logo pair was: (1) two interlaced number one's

12  that created the impression of a third number one in the space between them; and (2) a stylized

13  version of the word "one" with the same opposing number one's at the bottom left and top right

14  corners.  (Blanchard Depo. at 30:9-23, Exh. A to Hangartner Decl.).

15      One Industries eventually selected this pair of logos with a slight modification removing

16  the number one's at the corners of the stylized word "ONE" so that they looked as follows:

17
18  
19

20  These two logos, referred to herein as the "One Icon" and the "One Angular" marks respectively,

21  were then licensed by Blanchard and Boinnard to One Industries.  One Industries first used these

22  marks in commerce in September 1999.  (*See*, Trademark Registrations for One Icon and One

23  Angular marks, Exhs. O and P to Hangartner Decl.).

24      In order to establish an association between these new marks and One Industries, the

25  company initially introduced them both standing alone and in relatively close association with its

26  existing trademarks.  (*See, e.g.,* One Industries Spring 2000 catalog, Exh. E to Hangartner Decl.).

27  Consumers, however, quickly came to associate these marks with One Industries and the company

28

-5-

1   was able to separate the One Icon and One Angular marks from its old trademarks almost

2   immediately.

3           This process can be seen in the One Industries catalogs.  In the Spring 2000 catalog, the

4   One Icon mark generally appears in relatively close proximity to the existing One Industries logo.

5   (Exh. E to Hangartner Decl.).  Yet, almost immediately One Industries was using both the One

6   Icon and the One Angular marks on their own.  (*See, e.g.,* Exhs. F, G, H, and I to Hangartner

7   Decl.).  Thus, by 2001 the company was sufficiently confident consumers associated the One Icon

8   and One Angular marks with One Industries that it used those marks standing alone to identify the

9   company as the source of the particular goods on which the logos appeared.

10          2.    One Industries' Helmet Line

11          In 2003, One Industries made a decision to develop a line of off-road motorcycle helmets.

12  Consistent with its design philosophy, One Industries did not just use an off-the-shelf helmet

13  design.  Instead, the company spent substantial time and resources developing a new helmet

14  design that would set it apart from all of the other helmets on the market at the time.  By late 2003

15  when it first began to promote the new helmet line, the One Icon and One Angular marks were the

16  company's primary logos.  (*See, e.g.,* Exhs. F, G, H, and I to Hangartner Decl.).  Thus, it was

17  natural for the company to use the One Icon Mark and the One Angular marks as the primary

18  logos that would appear on the company's new helmets.

19          The new helmet – called the Trooper – was introduced in late 2003 and began selling in

20  January 2004.  The Trooper was a high-quality, high-end off-road helmet with a suggested retail

21  price of $299.  The new Trooper helmet was greeted with enthusiasm.  The April 2004 edition of

22  Motocross Action magazine described the new Trooper helmet as "something completely out of

23  the ordinary" and went on to explain that:

24
25          **You can't say One Industries copied any existing helmet design with the
            Trooper.  It has a look that is uniquely its own.**  The nose piece doesn't borrow
            design cues from anyone or anything.  The consensus among MXA test riders is
26          that the shape is ultra-cool.

27
28                                                    -6-

1  (Trooper helmet review in April 2004 issue of Motocross Action, Exh. Q to Hangartner Decl.).

2  Consumers responded the same way to the new design, and the Trooper was an immediate

3  success.  As can be seen on the images of the Trooper from the 2004 helmet catalog, the One Icon

4  and One Angular marks appear prominently on the helmet to identify it as a One Industries

5  product.  (One Industries 2004 helmet catalog, Exh. J to Hangartner Decl.).

6        Following on the success of its Trooper line, One Industries lauched a second helmet line

7  called the Kombat in mid-2005.  (*See* One Industries 2006 Helmet catalog, Exh. L to Hangartner

8  Decl.).  The mid-priced Kombat line has a suggested retail price of approximately $169.  The

9  Kombat has also been a huge success, with strong sales since its introduction.

10        3.   Trademark Registrations

11        The United States Patent and Trademark Office ("USPTO") has granted four federal

12  trademark registrations for each of the marks used by One Industries.  Registrations for the One

13  Icon mark include: Registration No. 2831709 for clothing; Registration No. 2831710 for fenders,

14  handle bar pads, and seat covers for motorcycles; Registration No. 2842641 for printed materials;

15  and Registration No. 2946193 for motorcycle helmets.  (Exh. O to Hangartner Decl.). The

16  registrations for the One Angular mark include: Registration No. 2894614 for clothing;

17  Registration No. 2894616 for fenders, handle bar pads and seat covers for motorcycles;

18  Registration No. 2894615 for printed materials; and Registration No. 2970422 for motorcycle

19  helmets. (Exh. P to Hangartner Decl.).

20  **B.**    **Jim O'Neal Distributing, Inc.**

21        Defendant and Counterclaimant Jim O'Neal Distributing, Inc. ("O'Neal") is a California

22  corporation established in 1970.  Originally a distributor of products sold under other brand

23  names, O'Neal eventually developed its own product lines and now primarily sells products under

24  its own "O'Neal" brand.  O'Neal focuses on the manufacturing and distributing of motorcycle and

25  bicycle apparel, gear, parts, and accessories.  (Amended Answer and Counterclaims ("Answer") at

26  ¶¶ 2, 44).

27

28

-7-

1    1.    O'Neal's Trademarks

2         O'Neal is the alleged owner of the word mark O'NEAL (the "O'NEAL mark") and claims

3    to have used this mark continuously in commerce on protective gear and motocross clothing since

4    1984, on bicycle and motorcycle parts since 1990, and on helmets since 1996.  (Answer at ¶ 46,

5    47, 48, 49).

6         O'Neal also asserts ownership of various trademarks that it claims are actually a single

7    mark, which it inconsistently refers to as either the "O' mark" or the "O mark".  (Answer at ¶ 51).

8    O'Neal has provided five (5) distinct and very different images of that "single" mark, and this

9    Court has already rejected O'Neal's argument that these are in fact a single mark.  (May 29, 2007

10   Order, Docket Entry 31).  The relevant O' marks and O'Neal's descriptions of these marks are set

11   forth in the table below:

12

| First Use | Registration Status | As described by O'Neal | Image of Mark |
|---|---|---|---|
| 1991 | Unregistered | "Starting in 1991, O'Neal began usage of the O' mark in interstate commerce . . . .The mark constituted of a stylized letter O with an apostrophe:" (Answer and Counterclaims at ¶ 52.) | |
| 1992 | Unregistered | "In 1992 O'Neal continued to use the O' mark . . . . The O' mark was changed slightly:"  (Answer and Counterclaims at ¶ 53.) | |
| 1993 | Reg. No. 2006997 | "In 1993 O'Neal also began using the above O' mark at a tilted angle in addition to the above mark:" (Answer & Counterclaims at ¶ 54 (emphasis added).)<br><br>Note that the actual mark bearing Reg. No. 2006997 is materially different than the mark attributed to this registration in O'Neal's counterclaims.  The registered mark as shown on the U.S. PTO website at www.uspto.gov is reproduced below the mark attributed to this registration in the Answer & Counterclaims. | |

-8-

| 1997 | Unregistered | "In 1997 O'Neal began using another stylization of the O' mark in addition to the registered mark shown above:" (Answer & Counterclaims at ¶ 55 (emphasis added).) | |
| 2003 | Application Serial No. 788750 | "In 2003 O'Neal also began using another stylization of the O' mark in addition to the mark shown in Paragraph 54:" (Answer & Counterclaims at ¶ 56 (emphasis added).) (The image at right was taken from the United States Patent & Trademark Office website) | |

2.    O'Neal Trademark Registrations

The USPTO has granted four federal trademark registrations for the O'NEAL mark: (1) Registration No. 2753028 in International Class 028 for protective gear for motorcycles and bicycles; (2) Registration No. 2756159 in International Class 025 for motorcycle and bicycle accessories; (3) Registration No. 2788722 in International Class 012 for various bicycle and motorcycle parts; and (4) Registration No. 2753027 in International Class 009 for protective helmets for bicycles and motorcycles. (Answer at ¶46).

Of the five different O' marks identified in the Amended Counterclaims, O'Neal has sought trademark registrations for two: Registration No. 2006997 claiming first use in commerce as March 1993; and Serial Application No. 78878750 claiming first use in December of 2003. (Exhs. R and S to Hangartner Decl.). The first O' mark claimed by O'Neal was allegedly used in commerce in 1991 on motocross clothing, gear, parts, and accessories. (Answer at ¶ 52). In 1992 O'Neal claims use of a different O' mark on "motocross related products." (*Id*. at ¶ 53). The O' mark associated with Registration No. 2006997 is for clothing and allegedly appeared as early as March 1993 in conjunction with the 1992 mark. (*Id*. at ¶ 54).

As of 1997, O'Neal began using another O' mark in addition to the 1993 mark, but does not assert use of the 1992 mark. (*Id*. at 55). O'Neal alleges use of the final O' mark (Serial Application No. 78878750) in December of 2003 along with continued use of the 1993 mark, but does not assert continued use of the 1997 mark as of December 2003. (*Id*. at 56). The final O'

1  mark application is for retail, wholesale, and distributorship services in International Class 35.

2  (*Id*.)

3  **C.     Pre-Filing Communications**

4         In a letter dated May 11, 2006, addressed to Ludovic Boinnard, President of One

5  Industries, counsel for O'Neal accused One Industries of trademark infringement related to One

6  Industries' use of the One Icon Mark and the One Angular Mark.  (May 11, 2006 Letter To

7  Ludovic Boinnard, Exh. T to Hangartner Decl.).  Counsel for One Industries responded by letter

8  dated May 16, 2006, denying all infringement of O'Neal's intellectual property, alleging

9  infringement of the One Icon Mark by O'Neal's current O' mark, and seeking cessation of all

10  continuing infringement.  (*Id.*)  O'Neal responded with threats of litigation for infringement.  (*Id.*)

11  **D.     Procedural History**

12         On or about May 25, 2006, One Industries filed its Complaint for Declaratory Judgment

13  against O'Neal.  The Complaint contains four causes of action for declaratory relief.  Three of the

14  causes of action seek a declaration of non-infringement of O'Neal's trademark rights.  (Complaint

15  at ¶¶24-29.)  The fourth cause of action seeks a declaration of no unfair competition related to One

16  Industries' marketing.  (*Id.* at ¶31.)

17         On or about August 21, 2006, O'Neal answered the Complaint and asserted six

18  counterclaims alleging trademark and trade dress infringement and unfair competition.  On May

19  29, 2007, this Court granted in part One Industries' motion to dismiss and for a more definite

20  statement, and ordered O'Neal to amend its counterclaims to "provide a more definite statement

21  concerning the mark alleged to have been infringed."  (May 29, 2007 Order at 13.).

22         On July 2, 2007, O'Neal filed an Amended Answer and Counterclaims against One

23  Industries.  The Amended Counterclaims set forth four (4) causes of action for:  (1) alleged

24  trademark infringement of the O'NEAL mark; (2) alleged trademark infringement of an O'Neal

25  O' mark; (3) alleged trade dress infringement; and (4) alleged unfair competition based on

26  trademark and trade dress infringement.  The Amended Third-Party Complaint alleges nine (9)

27  causes of action including the same four contained in the Amended Counterclaims.  The additional

28
                                                                    -10-

four causes of action seek cancellation of four trademark registrations for the One Icon and One Angular marks.

### III. ARGUMENT

A court may properly grant summary judgment where no material issue of fact exists when viewing the evidence most favorably to the non-moving party such that the moving party is entitled to prevail as a matter of law. *See* Fed. R. Civ. P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994). It is the burden of the non-moving party to present "significant probative evidence to support the complaint" to defeat a motion for summary judgment. *T.W. Elec. Serv. Inc. v. Pacific Elc. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Summary judgment may be granted in a party's favor on all or any part of the claims and defenses presented. *See Matthews v. Xerox Corp.*, 319 F. Supp. 2d 1166, 1170 (S.D. Cal. 2004) (citing *Wang Laboratories, Inc. v. Mitsubishi Elec. Am., Inc.*, 860 F. Supp. 1448, 1450 (C.D. Cal. 1993); *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990). Summary judgment must be granted where the non-moving party has failed to prove an essential element of its claim. *See Cleary*, 30 F.3d at 1259 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**A.    O'Neal Cannot Prove Infringement of its Trademarks as a Matter of Law**

O'Neal has asserted two counts of trademark infringement, alleging that: (1) One Industries' use of the One Angular mark infringes on its O'NEAL mark as used on motocross related apparel, accessories, and helmets; and (2) One Industries use of the One Icon mark infringes on a rounded O' mark introduced in 1997 shown here:



Answer at ¶¶79-87; Amended Third-Party Complaint at ¶¶39-47. This mark will be referred to herein as O'Neal's "Rounded O' mark."

A party who first uses a mark in association with the sale of goods in commerce acquires rights to that mark as a trademark. *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 756 (9th Cir. 2006) (citing *Dep't of Parks & Recreation v. Bazaar del Mundo, Inc.*, 448 F.3d 1118, 1124

(9th Cir. 2006)).  Placing a mark in any manner upon a good, or upon the displays or tags associated with a good, satisfies the use in connection with the sale of a goods requirement.  *Id.*  The party who first uses a mark in connection with the sale of goods has senior rights to that mark and may enjoin a subsequent party from using confusingly similar marks in the same industry and market.  *Brookfield Comme'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

To succeed on a trademark infringement claim, a plaintiff must prove that the allegedly infringed trademark is valid and protectable and that a likelihood of confusion regarding the origin of the defendant's product exists.  *See Century 21 Real Estate v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).  To determine the likelihood of confusion, the Ninth Circuit has promulgated eight relevant factors to consider:  (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979).  Similarity of marks is evaluated on sight, sound, and meaning of the marks.  *Sleekcraft*, 599 F.2d at 349.  The marks in question must be viewed in their entirety as they appear to consumers.  *See Brookfield*, 174 F.3d at 1054.  No likelihood of confusion exists where the marks are entirely unalike. *Id*.

The likelihood of confusion analysis is relevant only to related goods. *Sleekcraft*, 599 F.2d at 348.  Related goods are items that the consuming public would assume to be affiliated with, connected with, or sold by the trademark owner even though the trademark registration does not cover those goods.  *See Chrysler Corp. v. Vanzant*, 44 F.Supp.2d 1066, 1068 (1999); *Sleekcraft*, 599 F.2d at 348.

      1.    <u>There is No Infringement of the O'NEAL mark as a Matter of Law</u>

Despite extensive discovery in this case, there is no evidence to support O'Neal's claim of infringement of its O'NEAL mark.

-12-

At the outset, this is a situation where the alleged infringing mark is entirely unlike the registered mark. The One Angular mark is a highly stylized logo that evokes the word ONE, not O'NEAL. A side by side comparison demonstrates this point:

O'NEAL 

The two marks look nothing alike. While the One Angular mark evokes the word ONE – which has the same first three letters as the word O'NEAL – it is quite abstract and absent the context of knowing that it is associated with the company One Industries would be difficult to even recognize as the word ONE. Moreover, the O'NEAL mark has an apostrophe between the O and N which distinguishes even the first three letters of the two marks. Thus, on this basis alone there is no likelihood of confusion.

Working through the *Sleekcraft* factors, the name O'NEAL can be considered a relatively strong mark, although this factor has little bearing on the analysis in this case. The goods sold also are proximate to each other as both companies sell off-road helmets and other motocross gear.

With respect to similarity, however, the two marks are extremely dissimilar in all respects. In terms of appearance or "sight," as shown above the two look nothing alike. In terms of sound, the two are also completely different. O'NEAL is a two-syllable proper name with a hard "o" and a hard "e" that is pronounced "oh-neel." One is a single-syllable word with a soft "o" that is pronounced "wun." Finally, in terms of meaning the two marks have no relationship. O'NEAL is the family name of company founder Jim O'Neal, while the word "one" represents the cardinal number and is used to designate the first item in a series. In this case, it reflects the significance of being the top rider in a particular motorcycle discipline, who typically rides with the number "1" on their number plate. Thus, this factor weighs very strongly against a finding of likelihood of confusion.

There is absolutely no evidence of actual confusion between the O'NEAL and One Angular marks. Moreover, O'Neal has not conducted any surveys or made any attempt to develop evidence of potential confusion between these marks. Given that One Industries and O'Neal have

-13-

1  co-existed in the motocross industry since 1997, and that the O'NEAL and One Angular marks

2  have been widely used on motocross goods since 1999, this lack of any evidence of actual

3  confusion after more than seven (7) years of co-existence is a strong indication that there is no

4  likelihood of confusion.  *See Cohn v. Petsmart, Inc.,* 281 F.3d 837, 842-43 (9th Cir. 2002) (noting

5  lack of actual confusion after six (6) years of co-existence in same market as strong evidence of

6  lack of likelihood of confusion) (citing *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d

7  Cir.1999) (lack of evidence about actual confusion after an ample opportunity for confusion "can

8  be a powerful indication that the junior trademark does not cause a meaningful likelihood of

9  confusion"); 3 McCarthy § 23:18.)

10  　　　In terms of marketing channels, both companies advertise in many of the same magazines

11  and sell products through specialty retail stores.  While O'Neal also sells through a national

12  discount chain, there is certainly overlap in marketing channels.  In terms of the type of goods and

13  the degree of care likely to be exercised by the purchaser, this varies by product.  While certain

14  products like t-shirts may be quite inexpensive, in a highly image-conscious industry like

15  motocross there still may be very strong brand differentiation.  Moreover, with higher priced

16  products such as helmets that retail for as much as $299, consumers are likely to exercise a high

17  degree of care.  Thus this factor weighs against a finding of likelihood of confusion.

18  　　　In terms of intent, the only evidence is the testimony of Messrs. Blanchard and Boinnard,

19  who have both indicated that they did not consider O'Neal to be a competitor or a company that

20  they even thought about when they selected the One Angular and One Icon marks in 1999.

21  Finally, with respect to the likelihood of expansion of the product lines, there is no evidence of

22  further expansion that might bring the two companies into direct competition with regard to future

23  product lines.

24  　　　Here, the driving factors are the dissimilarity of the two marks and the absolute lack of any

25  evidence of actual confusion despite many years of co-existence.  The lack of intent and degree of

26  care factors also weigh against any finding of a likelihood of confusion.  There is simply no basis

27

28

-14-

MEMO OF POINTS & AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

1  to support any likelihood of confusion between the O'NEAL and One Angular marks, and thus a

2  declaratory judgment of non-infringement must be entered.

3          2.   <u>There is No Infringement of Any O or O' Mark as a Matter of Law</u>

4        Despite this Court's order requiring O'Neal to "provide a more definite statement

5  concerning the mark alleged to have been infringed," O'Neal's pleadings are still somewhat

6  ambiguous regarding the specific mark it alleges is infringed.  First, O'Neal broadly asserts that

7  One Industries' use of the One Icon mark infringes "O'Neal's exclusive right to use the O mark on

8  motocross related apparel, accessories, and helmets."  (Answer at ¶84).  It then asserts that One

9  Industries' use of the One Icon mark infringes "O'Neal's O' mark" as used on the same products,

10  and specifically refers to its Rounded O' mark which appears as follows:



11

12

13  (*Id.*)  It is not clear from O'Neal's pleadings whether O'Neal considers its O mark to be something

14  different than its O' mark, or how these two claims inter-relate, but each theory will be addressed.

15          a.   <u>O'Neal Does Not Have the Exclusive Right to Use an O</u>

16        O'Neal's first theory, that it has the exclusive right to use the letter O – regardless of form

17  – on motocross apparel, accessories, and helmets is simply absurd.  A single letter may function as

18  a trademark only if used in a manner such that consumers would perceive the letter as indicating

19  origin of the product.  *See* JT McCarthy, *McCarthy On Trademarks and Unfair Competition*, §

20  7:11 (4th. ed 2006).  Letters of the alphabet are weak trademarks. *General Motors Corp. v.*

21  *Cadillac Marine & Boat Co.*, 226 F. Supp. 716 (W.D. Mich. 1964).  A letter that is part of a

22  composite mark is not independently registrable if the letter does not create a separate commercial

23  impression on its own.  *See In re Societa Ceramica Richard Ginori*, 137 USPQ 457 (T.T.A.B.

24  1963);  *Fulkerson v. The Muter Co.,* 135 USPQ 379, 381 (T.T.A.B. 1962);  McCarthy § 7:11.

25  Although a presumption of secondary meaning may attach to a composite mark over time, that

26  presumption is not applied to an isolated part of the composite mark.  *See Fulkerson*, 135 USPQ at

27  381.

28

-15-

MEMO OF POINTS & AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

1    First, O'Neal has never used an "O" mark, it has always included an apostrophe as part of

2    its O' logos.  Moreover, O'Neal has always used O' in a stylized form, so it has always appeard as

3    a composite mark.  (*See* Answer at ¶¶ 51-56).  All evidence submitted by O'Neal also shows the

4    O'  mark with such combined elements.  (*See* Answer at Exhibits 1-12).

5    There is also no evidence that the letter O creates a separate commercial impression on its

6    own, such that it could support a claim to exclusivity.  In fact, the evidence establishes that there

7    are a variety of other companies that use O or O-shaped logos on motocross apparel, accessories,

8    and helmets.  For example, a very well-known company called Oakley uses its very simple O logo

9    both on and in connection with marketing its motocross goggles.  (*See* Exh. U to Hangartner

10    Decl.).  Another established company called OGIO uses a stylized O logo on motocross gear bags.

11    (*See* Exh. V to Hangartner Decl.).  A company called Alloy marketed a complete line of

12    motocross gear and apparel using an O-shaped logo.  (*See* Exh. W to Hangartner Decl.).

13    Moreover, a wide variety of companies use generally O-shaped logos on motocross apparel,

14    accessories, and helmets.  (*See, e.g.,* No Fear catalog at Exh. X to Hangartner Decl.).

15    The mere fact that O'Neal has used a variety of O' marks over the years does not establish

16    that it has the exclusive right to use an O' on motocross goods – much less an O – particularly in

17    view of the variety of other O and O-shaped marks in use on motocross goods during this time.

18    Thus, as a matter of law O'Neal has never had any exclusive right to use an O on motocross

19    apparel, accessories, and helmets and it has no such right today.  Accordingly, even if we assume

20    that the One Icon mark is an O,[2] O'Neal has not seized control of one of the 26 letters of the

21    alphabet such that it can exclude all others from using it on motocross goods and related products.

22    b.    The One Icon Mark Does Not Infringe O'Neal's 1997 O' Mark

23    When forced to identify a specific O' mark allegedly infringed by One Industries, O'Neal

24    faced a dilemma.  In its initial cease and desist letter on May 11, 1996, O'Neal had stated that One

25    Industries was infringing its most recent O' mark, shown below:

26

27    ────────────────
      [2]    As discussed above, the concept of the One Icon mark is that it is two interlaced 1's that
28    create a symmetrical shape so that it can be viewed from all angles.

-16-

1

2



3   (Exh. T to Hangartner Decl.).  This O'Neal mark will be referred to herein as the O'Neal "Angular

4   O' mark."  According to that cease and desist letter, O'Neal had been using this logo for "over a

5   decade."  (*Id.*)  If this had been true, O'Neal would have had priority as to between this logo mark

6   and the One Icon mark.  But this statement was not true.  As established by O'Neal's application

7   to register its Angular O' mark, it had only used this logo mark on motocross goods since

8   December 2003.  (Exh. S to Hangartner Decl.).  Since One Industries has used the One Icon mark

9   on motocross goods since 1999, it has the senior position as between these two logos and any

10  likelihood of confusion between them would establish infringement by O'Neal, not One

11  Industries.

12      Not wanting to prove its own infringement, O'Neal shifted gears when it amended its

13  counterclaim to allege infringement of the older Rounded O' mark.  Since O'Neal introduced its

14  Rounded O' mark in 1997, it has seniority as to that mark.  O'Neal's problem, however, is that it

15  cannot prove infringement of this logo.

16      Working through the *Sleekcraft* factors, there are many brands even just within the

17  motocross industry such as Oakley, OGIO, Alloy, and No Fear that use an O or O-shaped logo to

18  identify their goods.  Examples of such logos can be found at Exhs. U, V, W, and X to Hangartner

19  Decl.  Thus, the Rounded O' logo is used in a crowded field and thus cannot be considered a

20  strong mark.  *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.,* 856 F.2d 1445, 1449 (9th

21  Cir.1988) (discussing relative weakness of marks in crowded field).

22      The goods at issue are certainly proximate to each other, as they include motocross

23  products and related goods and both marks appeared on off-road helmets simultaneously during

24  the 2004 product year.[3]

25  _____

26  [3]    The O'Neal Rounded O' mark was phased out on helmets quickly in favor of the O'Neal
    Angular O' mark.  By the 2005 product catalog, the Rounded O' mark appears only on the 546

27  model from O'Neal, and it has been replaced entirely by the Angular O' mark by the 2006 catalog.
    Relevant excerpts from O'Neal's 2004, 2005, and 2006 catalogs are at Exhs. Y, Z, and AA to the

28  Hangartner Decl.

-17-

The marks, however, are not confusingly similar. Viewed side-by-side, they are easily distinguished from each other and they have very different visual appearance:



The One Icon mark is sharp, pointy, and angular, while the Rounded O' mark has soft, rounded oval shape with a prominent apostrophe extending off of the upper right corner. The One Icon is composed of two clearly separate elements that are symmetrical and that often appear in different colors, such as the red and black version shown here. The O'Neal Rounded O' is a single large O with a much smaller separate apostrophe, and these elements are always the same color. Viewing these two marks in context, no reasonable consumer could find them confusingly similar in appearance.

In terms of sound and meaning, the One Icon mark does not have a sound as it is not a letter or word, it is simply a logo. Thus, there is no similarity as to sound. Finally, as to meaning the two logos have completely different meanings. The One Icon mark is two distinct number 1's that are interlaced so that the mark is completely symmetrical. The number 1 was chosen because of its significance in motocross – where the top rider in each class races with the number 1 plate on his or her motorcycle – and because it evokes the name One Industries. The Rounded O' logo is simply the first letter of the name O'Neal. Thus, the two logos are not confusingly similar at any level and this factor weighs very strongly against a finding of confusion.

With respect to evidence of actual confusion between the One Icon mark and the Rounded O' mark, there is none.[4] O'Neal featured the Rounded O' mark on its products between 1997 and 2004, so these marks co-existed in the motocross market for seven years without a single incident

---

[4] O'Neal may seek to introduce materials that it claims indicate actual confusion, but these materials relate specifically to helmets that used the newer O'Neal Angular O' mark. As noted above, if such evidence is admitted it would be evidence of an infringement by O'Neal, since the One Icon mark is senior to the O'Neal Angular mark. However, through the course of discovery it has became clear that such evidence was highly flawed and did not indicate any actual consumer confusion. If O'Neal seeks to rely on any such materials as evidence of actual confusion, they will be specifically addressed in a reply brief and evidentiary objections as appropriate.

-18-

1   of confusion. This again is strong evidence that there has never been any confusion between these

2   two marks and weighs against a finding of any likelihood of confusion.

3       As to the remaining factors, the same analysis set forth above with regard to the O'NEAL

4   mark applies. Both companies advertise in many of the same magazines and sell products through

5   specialty retail stores, but O'Neal also sells through a national discount chain. In terms of the type

6   of goods and the degree of care likely to be exercised by the purchaser, this varies by product but

7   this is an image-driven, highly brand-sensitive market consumers are likely to exercise a high

8   degree of care particularly with the higher priced helmet products. Thus this factor weighs against

9   a finding of likelihood of confusion. The only evidence regarding intent shows that there was no

10  intent by One Industries to trade off of the O'Neal name, and there is no evidence of further

11  expansion that might bring the two companies into direct competition with regard to future

12  product lines.

13      Here again, the driving factors are the dissimilarity of the two marks and the lack of any

14  evidence of confusion despite many years of co-existence in the same market. The lack of intent

15  and degree of care factors also weight against any finding of a likelihood of confusion. There is

16  simply no basis to support any likelihood of confusion between the One Icon and the O'Neal

17  Rounded O' marks, and thus a declaratory judgment of non-infringement must be entered.

18  **B.    Trade Dress Infringement**

19      To sustain a claim for trade dress infringement, O'Neal must prove: (1) that its claimed

20  dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it

21  is inherently distinctive or has acquired secondary meaning; and (3) that One Industries' product

22  creates a likelihood of consumer confusion. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158

23  F.3d 1002, 1005 (9th Cir. 1998).

24      According to O'Neal, its distinctive trade dress for helmets "features the word O'NEAL in

25  a slight slant across the lower part of the helmet in bold typeface." (Answer at ¶59). One

26  Industries allegedly infringes this "distinctive trade dress" because it places the One Angular Mark

27  in a "slight slant across the lower part of the helmet in bold typeface." (*Id*. at ¶ 69). While

28

-19-

nominally a trade dress infringement claim, this claim is really just a subset of O'Neal's broader claim of infringement of its O'NEAL mark, as it is based on alleged likelihood of confusion between a stylized O'NEAL logo and the One Angular mark as they appear on the chin bar of certain helmets. O'Neal has not – and cannot – claim the exclusive right to placement of a logo on the chin bar area of a helmet as this has been done by virtually every helmet company for years.

A threshold question with respect to this claim, like the trademark infringement claims, is which stylized O'NEAL logo is at issue. In the actual Amended Answer and Counterclaims at ¶59, O'Neal has shown a helmet with its newer angular O'NEAL logo that was introduced in late 2003. Yet in the referenced Exhibit 11, the examples shown all feature the older rounded O'NEAL logo that was introduced in 1997. As with the Angular O' and Rounded O' marks discussed above, this distinction is important as One Industries introduced the One Angular mark in 1999, and thus has seniority with respect to the Angular O'NEAL mark. (*See* Exh. P to Hangartner Decl.). Thus, if there was confusion as between these two marks, it would be O'Neal infringing and not One Industries.

Based on the idea that O'Neal does not want to prove its own infringement, we will assume that O'Neal is claiming infringement based on the trade dress of helmets like those in Exhibit 11 that feature the older Rounded O'NEAL logo. The analysis of likelihood of confusion here is the same as the analysis for O'Neal's trademark claim based on the O'NEAL mark. Most importantly, the two logos that appear on the respective helmets are not sufficiently similar to cause confusion and there is no evidence of actual confusion. Thus, for all of the same reasons, there is no trade dress infringement and a judgment of non-infringement must be entered as a matter of law.

**C.     O'Neal's Unfair Competition Claim Fails For All of the Same Reasons**

O'Neal has asserted California Unfair Competition claims against both One Industries and Mr. Boinnard based on the same alleged trademark and trade dress infringement discussed above. (Answer at ¶¶93-97; Amended Third-Party Complaint at ¶¶77-80). As these claims are based on a finding of infringement, they cannot be sustained if judgment of non-infringement is entered as

-20-

1  requested above.  Thus, if this motion is granted as to the trademark and trade dress infringement

2  counts, it must also be granted as to the California Unfair Competition claims.

3  **D.      O'Neal's Cancellation Claims Must be Denied as a Matter of Law**

4        Counts IV-VII of O'Neal's Amended Third-Party Complaint against Mr. Boinnard seek

5  cancellation of Trademark Registration Nos. 2831709, 2831710, 2946193, 2894616, and 2970422.

6  These registrations are for the One Icon mark and the One Angular mark in various classes of

7  goods.  The basis for O'Neal's cancellation claims is the alleged likelihood of confusion that is

8  also the basis for O'Neal's trademark infringement claims.  Thus, like the Unfair Competition

9  claims, if this motion is granted as to the trademark infringement and trade dress infringement

10 claims, it must also be granted as to the cancellation claims in the Third-Party Complaint.

11 **E.      One Industries Is Entitled to Recover its Attorney Fees and Costs**

12       The Lanham Act provides that the court may award attorney fees to the prevailing party in

13 exceptional cases.  15 U.S.C. §1117(a).  "[B]ad faith of one of the parties may [ ] be part of those

14 exceptional circumstances" warranting a fee award under section 35(a).  *Fasa Corp. v. Playmates*

15 *Toys, Inc.,* 108 F.3d 140, 143 (7th Cir. 1997). "When a plaintiff's case is groundless, unreasonable,

16 vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorney's fees

17 to the defendant." *Scott Fetzer Co. v. Williamson*, 101 F.3d 549 (8th Cir. 1996).  While a finding

18 that the losing party has acted in bad faith may provide evidence that the case is exceptional, see

19 *Fasa Corp.*, 108 F.3d at 143, other exceptional circumstances may warrant a fee award.  *Steven W.*

20 *Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997).

21       This case arises from a cease and desist letter sent from O'Neal's trademark counsel to

22 One Industries on May 11, 2006.  This letter claimed that One Industries was infringing O'Neal's

23 most recent O' mark, shown below:



24

25

26

27

28
                                              -21-

MEMO OF POINTS & AUTHORITIES IN SUPPORT
                                              OF MOTION FOR SUMMARY JUDGMENT

1  (Exh. T to Hangartner Decl.)  According to that cease and desist letter, O'Neal had been using this

2  logo for "over a decade."  (*Id.*)  This statement – which was the premise for the entire allegation of

3  infringement – was false.  As established by O'Neal's application to register this mark, it had been

4  used only since December 2003.  Moreover, that registration application had been filed by the

5  same law firm just three (3) days prior to the May 11, 2006, cease and desist letter, so there is no

6  argument that this was an innocent mistake.  Rather, it appears to have been a calculated attempt

7  to intimidate a company that O'Neal perceived to be smaller than it, in hopes that One Industries

8  would give up its rights rather than defend itself.

9         O'Neal's next correspondence was more overt in its threat to use litigation as a tool to

10 harass One Industries.  After broadly asserting that O'Neal has used an unspecified O mark since

11 1993 and has branded its helmets since 1996, O'Neal's counsel stated that:

12        We have a lot of evidence to support this, and **we will gladly shower you with it** in
          discovery.  **No doubt your client will delight in the cost of studying 13 years**
13        **worth of evidence, and making thousands of pages of copies**.

14 (*Id.* (emphasis added)).  This is an almost gleeful admission of bad faith on behalf of O'Neal.

15        The subsequent litigation has confirmed that this case is not about redress of legitimate

16 grievances – this case is a tool to slow down an upstart company that was growing quickly and

17 that O'Neal perceived as a competitive threat.  O'Neal's first complaint was based on the

18 argument that five very different looking O' logos were all a single mark.  After this Court made it

19 clear that the marks were different in its order granting One Industries' motion for a more definite

20 statement, O'Neal came back with amended counterclaims based on a new theory that O'Neal has

21 the "exclusive right" to use an O mark on motocross apparel, accessories, and helmets.  As set

22 forth above, this is a frivolous position when there are several other companies that have been

23 using O marks on such products for years, most prominently the famous brand Oakley.  The

24 concept that the word mark O'NEAL is infringed by a highly stylized version of the word ONE

25 also pushes the boundaries of what is a non-frivolous claim.

26        The end result of this process has been exactly what O'Neal intended.  One Industries has

27 been forced to divert resources, including substantial time, energy, and capital, to the defense of a

28

-22-

1    lawsuit grounded in false allegations and brought in bad faith.  One Industries never intended to

2    associate itself in any way with O'Neal – and in fact would have avoided such an association at all

3    costs because O'Neal is a by its own admission a low-end brand, while One Industries is a cutting

4    edge design company that is trying to push the industry forward and create positive consumer

5    trends.  (*See* Article "TWMX All Access: O'Neal Distributing" at Exh. BB to Hangartner Decl.).

6         This type of harassing litigation is a drag on our economy and a deterrent to competition.

7    The only available redress for One Industries is an attorney fee award.  This is an exceptional case

8    and a fee award is appropriate as both a remedy and a deterrent.

9                                    **IV.  CONCLUSION**

10        For all of the foregoing reasons, One Industries and Mr. Boinnard respectfully request that

11   judgment be entered finding no infringement or unfair competition, and denying O'Neal's claims

12   for cancellation.

13

14   DATED:  August 15, 2007          X-PATENTS, APC

15

16                                    By    s/ Jonathan Hangartner
                                            Email: jon@x-patents.com

17                                          Attorneys for Plaintiff/Counter-Defendant ONE
                                            INDUSTRIES, LLC and Third-Party Defendant

18                                          LUDOVIC BOINNARD

19

20

21

22

23

24

25

26

27

28

-23-