X-PATENTS, a Professional Corporation
JONATHAN HANGARTNER, Cal. Bar No. 196268
5670 La Jolla Blvd.
La Jolla, CA 92037
Telephone:   858-454-4313
Facsimile:   858-454-4314
Email: jon@x-patents.com

Attorneys for Plaintiff and Counter-Defendant
One Industries, LLC, and Third-Party Defendants
Ludovic Boinnard and Marc Blanchard

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONE INDUSTRIES, LLC, a limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>JIM O'NEAL DISTRIBUTING, INC., a corporation,<br><br>　　　　　　　Defendant.<br><br>AND ALL RELATED COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS | Case No. 06cv1133 JAH(AJB)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF THE COUNTERCLAIMS AND THIRD-PARTY CLAIMS OF JIM O'NEAL DISTRIBUTING**<br><br>The Honorable John Houston<br>Complaint Filed:  May 25, 2006<br><br>Date:  October 22, 2007<br>Time:  2:30 p.m.<br>Crtm:  11 |

**INTRODUCTION**

In twenty-three pages of confusing, disjointed argument, O'Neal has again failed to identify which mark is allegedly infringed by the One Icon mark. O'Neal's lengthy *Sleekcraft* analysis is based on an unregistered and undefined mark it calls the O'Neal "O" mark, apparently still claiming the exclusive right to any logo that resembles the letter "O". Yet, O'Neal has not appropriated the use of the letter "O" in connection with motocross products. At most, O'Neal can establish senior rights in two marks: (1) the word mark O'NEAL, and (2) the composite mark ⬛. Neither is infringed as a matter of law.

**I.  BACKGROUND**

To help sort through the confusion sowed by O'Neal, we have filed a Statement of Undisputed Facts to provide a point of reference on factual issues. One of the more confusing aspects of O'Neal's brief is its mixing of various marks used at different times and on different products. This is particularly significant with respect to O'Neal's alleged evidence of actual confusion. If it is admissible, O'Neal's alleged evidence of actual confusion is completely irrelevant because it all relates to O'Neal's Angular O' mark, which appears as follows: ⬛. This mark was introduced more than ***five years after*** the One Icon mark. Thus, the One Icon has seniority with respect to O'Neal Angular O' mark, and any actual confusion between these two marks would actually tend to establish infringement by O'Neal not by One Industries.

The following timeline shows the introduction of various O' marks by O'Neal across the top, as well as the introduction of the One Icon mark on the bottom:



1

06cv1133 JAH(AJB) — REPLY MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Hangartner Decl. in Support of Summary Judgment Motion (Hangartner Decl.) Exh. AA. Thus, the first alleged evidence of actual confusion occurred *after* O'Neal had completed the change over from its Rounded O' mark to its new Angular O' mark on its helmets.[1]

## II. ARGUMENT

While trademark cases often involve factual disputes that preclude summary judgment, they are subject to the same standard for summary judgment as all other cases. Where there are no underlying genuine issues of material fact, the issue of likelihood of confusion "partakes more of the character of a conclusion of law than of a finding of fact." *United States Jaycees v. SF Junior Chamber of Commerce*, 354 F.Supp. 61, 78 (C.D. Cal. 1972) (quoting *Continente v. Continente*, 378 F.2d 279, 281 (9th Cir. 1967)); see also *Health Net. V. U.S.A. Health Net, Inc.*, 1993 WL 209558, *1 (C.D. Cal. 1993)(recognizing judicial dislike for resolving *complex* trademark cases on summary judgment, but noting that there is "no dearth of cases" approving summary judgment in trademark cases). Regardless of how the issue is characterized, "where there is no genuine issue as to any material fact concerning the existence of a likelihood of confusion, [the] Court has clear authority to grant summary judgment." *U.S. Jaycees*, 354 F.Supp. at 78.

In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has pointed out that there is an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Evidence that "is merely

---

[1] The first alleged instances of consumer confusion involved calls from customers allegedly requesting an "O'Neal Kombat helmet." O'Neal's witnesses are extremely vague about when these calls started, and O'Neal has not offered a single witness with knowledge that can place a call earlier than August 2006. Yet, Mr. Kashare claims to have been informed of calls in late 2005 or early 2006. Using this as the date for purposes of this motion, these calls coincided closely with a mistake by major online retailer Dennis Kirk whereby it incorrectly listed the One Industries' Kombat helmet as the "O'Neal Kombat". Thus, these calls appear to have been prompted not by confusion between any marks, but rather by an incorrect identification of the helmet on a major retail website. This is just one example of the type of "confusion" cited by O'Neal that has nothing to do with actual confusion regarding any trademarks.

colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

Here, O'Neal has failed to identify any admissible evidence establishing that there is a genuine issue for trial and summary judgment must be granted.

**A.      There is No Infringement of any O'Neal O or O' Mark**

O'Neal devotes most of its brief to the eight (8) *Sleekcraft* factors as applied to a mark it never clearly defines, and alternatively describes as "O'Neal's O mark" and "the O' mark". *See, e.g.*, Opp. Brief at [4:1,17 and 20] (referring to O mark) and [8:1; 13:6] (referring to O' mark). O'Neal's argument is further confused by the fact that its side-by-side comparison of the One Icon mark with one of its O' marks shows the unregistered composite Rounded O' mark that O'Neal introduced in 1995, while the helmet exemplars O'Neal uses compare the One Icon mark with the Angular O' mark that O'Neal introduced much later. Opp. Brief at 8-10.

By failing to identify the mark that is allegedly infringed, O'Neal has failed to meet even its initial burden of proving that it has any rights at issue. However, we will continue and address the three alleged trademarks that we believe O'Neal may be claiming are infringed: (1) the letter O; (2) the composite O'Neal Rounded O' mark [mark image] introduced in 1995; and (3) the composite O'Neal Angular O' mark [mark image] introduced in 2004 on gear and 2006 on helmets.

1.      O'Neal Has No Exclusive Right to the Letter O

The main thrust of O'Neal's *Sleekcraft* argument seems to be a claim to the exclusive right to use the letter O on motorcycle related products, regardless of form. O'Neal has neither applied for nor obtained any federal trademark registration for the letter O, thus there is no presumption that O'Neal has any right to exclude others from using an O on motorcycle related products.

"'Common basic shapes' or letters are, as a matter of law, not inherently distinctive." *Star Industries v. Bacardi*, 412 F.3d 373, 382 (2nd Cir. 2005). Accordingly, a single letter cannot constitute a trademark unless it has been proven to have acquired secondary meaning. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2nd Cir. 2006). "Secondary meaning is used generally to indicate that a mark ... 'has come through use to be uniquely

associated with a specific source.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n. 4 (1992) (citations omitted).

With respect to a single letter mark, this requires separate promotion of the letter itself, as opposed to promotion of composite marks that include the letter. For example, in *In re Societa Ceramica Richard Ginori*, 137 USPQ 457 (1963), the TTAB sustained the rejection of a trademark application for the letter "N", where the letter "merely constitutes an integral part of a composite mark." In affirming the refusal the Board reasoned:

> As shown above, it is readily apparent that the letter "N" does not, in and of itself, create a separate commercial impression, and it is, therefore, not registerable apart from the crest design of which it forms a composite part. In making this holding, it is noted that the record is devoid of any evidence to show either that the letter in question had ever been separately promoted as a mark or that it has been used in any manner other than as shown on the specimens submitted with the application.

*Id.* (internal citations omitted.)

O'Neal has not even come close to establishing secondary meaning with respect to the letter O. O'Neal's O' marks used over the years have always been composite marks, consisting of an O with a prominent apostrophe in a stylized form. There is no evidence establishing secondary meaning even in an O' letter mark, much less in an O letter mark. The only thing O'Neal has offered is its use of various composite O' marks over the years, and the baseless opinion of its alleged expert Mr. Sarabia that "consumers and industry professionals associated any 'O' on motocross apparel and helmets (excluding goggles) with O'Neal Distributing." Sarabia at ¶15. This opinion lacks foundation and ignores strong, undisputed evidence that there is no such secondary meaning.[2]

In particular, there can be no secondary meaning where there are other long-standing marks using the same letter in the same field, as is the case here. Numerous other companies have used O or O-shaped marks to identify their motorcycle related products, including Oakley, Ogio,

---

[2] One Industries will separately file detailed evidentiary objections to much of the evidence put forth by O'Neal, including many of Mr. Sarabia's opinions.

4

Alloy, and No Fear. *See, e.g.*, Hangartner Decl. Exhs. U, V, W, X. In fact, the Oakley mark is a barely-stylized O that is only slightly flattened as seen here: .

In addition to these marks, there are literally dozens of registered composite O and O' marks in virtually every class of goods. Hangartner Supp. Decl. Exhs. CC. Thus, it is an extremely crowded field, in which no entity controls the letter O and each company that uses a composite O or O-shaped mark has narrowly defined rights limited to the specific style of its logo.[3] There is no evidence that O'Neal has separately promoted the letter O as distinct from its various composite O' marks. O'Neal has failed to meet its high burden of proving that it has appropriated one of the 26 letters of the alphabet as its own, wielding the extraordinary right to preclude the use of any logo that resembles the letter O on motorcycle related products.

### 2. One Industries Does Not Infringe O'Neal's Rounded O' Mark

As set forth in One Industries' opening brief, application of the *Sleekcraft* factors to O'Neal's Rounded O' mark establishes no likelihood of confusion. We will respond to O'Neal's principal arguments here.

#### a. O'Neal's Mark is Not Strong

O'Neal has not addressed the relative strength of its Rounded O' mark separately, arguing vaguely that its "O mark" is strong because it is fanciful. O'Neal's Rounded O' mark is a composite mark consisting of a stylized O' – a common abbreviation for Irish surnames such as O'Neal.[4] Since the Rounded O' mark is not registered, O'Neal must prove secondary meaning to establish the strength of its mark. Yet O'Neal has failed to put forth any evidence that its Rounded O' mark has secondary meaning.

Moreover, the Ninth Circuit has consistently held that even an arguably strong mark is weak when it exists in a "crowded field." *Instant Media, Inc. v. Microsoft Corp.*, 2007 WL

---

[3] O'Neal's objection to evidence regarding other O and O-shaped marks is misplaced. Evidence that others have registered and used O marks to identify motorcycle related products is not offered to show the existence of other infringers, it is offered to rebut O'Neal's unsupported claim to an exclusive right to use of the letter O in connection with motorcycle related products.

[4] O' is a prefix common to many Irish names such as O'Neal that means "son of." Hangartner Supp. Decl. Exhibit DD.

2318948 at *13 (N.D. Cal. 2007). A mark in a crowded field is weak because "customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." 1 J. McCarthy, supra, § 11:26, at 511. O'Neal's Rounded O' mark exists in a very crowded field, hemmed in by numerous O, O' and O-shaped marks. *See e.g.*, Hangartner Decl. Exhs. U, V, W. *See also* Hangartner Supp. Decl. Exh. EE. Thus, even if O'Neal's Rounded O' mark has acquired secondary meaning, it cannot be considered a strong mark and must be given limited protection.

Finally, strength alone is irrelevant absent sufficient similarity and consideration of the other factors. For example, while Coke is clearly a very strong mark, One Industries does not infringe it because its marks are not similar and there is no evidence of actual confusion.

        b.     <u>The Rounded O' and One Icon Marks are Not Similar</u>

O'Neal focuses heavily on alleged similarity of the marks, emphasizing correctly that similarity must be considered "in light of the way the marks are encountered in the marketplace and the circumstances surrounding the[ir] purchase." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984). Having correctly stated the rule, however, O'Neal promptly ignores it and never compares the One Icon mark with the O'Neal Rounded O' mark as they appear on helmets. Instead, O'Neal shows several One Industries helmets bearing the One Icon and compares them to an unidentified O'Neal helmet that appears to be a 2008 model 708 Helmet. Like every other O'Neal helmet since late 2005, this helmet does not have the Rounded O' logo on it. Instead it has the more recent O'Neal Angular O' logo that is far more similar to the One Icon mark. Thus, O'Neal's comparison is irrelevant to potential infringement of the Rounded O' mark.

In fact, a comparison of O'Neal's Rounded O' mark on helmets as it appeared in the market reveals that it bears no resemblance to the One Icon and could not be confused by any reasonable consumer. *See* Hangartner Decl. Exh. J. *C.f.* Hangartner Exh. Y at 315-322.

c. There is No Evidence of Actual Confusion Between these Marks

O'Neal plays the same game with respect to alleged evidence of actual confusion. By mixing timeframes and marks, O'Neal obscures the undisputed fact that **all** of its alleged evidence of actual confusion[5] occurred *after O'Neal replaced the Rounded O' mark on its helmets with its Angular O' mark*. Specifically, the first alleged event of actual confusion is in late 2005 or early 2006, after the introduction of O'Neal's 2006 line. Hangartner Decl., Exh. AA. Yet, none of the helmets in O'Neal's 2006 line bears the Rounded O' logo. Thus, even ignoring the evidentiary issues facing O'Neal with respect to the admissibility of its alleged evidence of actual confusion, none of that evidence is relevant to alleged infringement of the O'Neal Rounded O' mark.

Rather, the undisputed evidence shows that the O'Neal Rounded O' mark and the One Icon mark co-existed on various motocross products from September 1999 through mid-2005 – and on helmets in 2004 and 2005 – without **any** instances of confusion. This is not surprising. The O'Neal Rounded O' mark looks very different from the One Icon in shape, and includes a prominent apostrophe that unmistakably associates it with an Irish surname like O'Neal, not with One Industries. This prominent apostrophe is an important distinguishing feature, which gives an otherwise free-standing letter of the alphabet a strong association with the name O'Neal.

d. There is No Evidence of Intent

O'Neal's arguments regarding intent border on the absurd, and depend on blatantly false characterizations of the undisputed facts. When One Industries introduced its helmet line it did not use a "new 'O' logo" – it used the same two primary logos it had been using to identify One Industries products for the preceding *five years*, the One Icon and One Angular marks. It also did not keep the name One Industries off of its helmets. In fact, the name One Industries appears on: (1) the helmet; (2) the box; and (3) the product literature accompanying the helmet. Hangartner Supp. Decl., Exh. FF.

---

[5] While we are suing O'Neal's earliest allegation for purposes of this motion, nothing herein should be construed as an admission that O'Neal has identified any admissible evidence of actual confusion.

1  Finally, the idea that One Industries launched a helmet microsite using the domain name
2  www.onehelmets.com to distance the product from One Industries makes no sense.  This site is
3  directly linked to the company's main web site at www.oneindustries.com, uses the same logos as
4  the main web site, and expressly and prominently identifies the helmets as a One Industries
5  product.  *Id.*, Exh. GG.  Microsites such as this are a common marketing approach used to create a
6  special place for prominent product lines, and are used by industry leader Fox Racing for every
7  one of its product lines.  *Id.*, Exhs. HH, II.  Thus, there is no evidence that One Industries or Mr.
8  Boinnard intended to confuse consumers regarding the source of the company's helmets.
9  Unless properly used, the long list of *Sleekcraft* factors has the potential to befuddle the
10 inquiry into likelihood of confusion.  *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901
11 (9th Cir. 2002).  The list of factors is not a score-card, nor should "[t]he factors . . . be rigidly
12 weighed; we do not count beans."  *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1129
13 (9th Cir. 1998).  The relative importance of each individual factor is highly case specific, and it is
14 often possible to reach a conclusion with respect to likelihood of confusion after considering only
15 a subset of the factors.  *Brookfield Communications*, 174 F.3d at 1054.
16 This is the case here.  O'Neal has done its best to befuddle, but the relevant underlying
17 issues are neither complex nor in dispute.  The lack of similarity between the One Icon and the
18 Rounded O' is such that when they co-existed in the market they were easily distinguished in the
19 crowded field by highly brand-conscious motocross consumers.  There is no evidence of any
20 confusion between the O'Neal Rounded O' and One Icon marks, and there is simply no basis on
21 which a jury could find a likelihood of confusion.
22       3. <u>One Industries' One Icon Mark is Senior to O'Neal's Angular O' Mark</u>
23 To the extent that O'Neal is alleging confusion between the O'Neal Angular O' mark and
24 the One Icon, it can only prove its own infringement.  O'Neal has not even attempted to dispute
25 that the One Icon mark is senior to the O'Neal Angular O' mark, which it pre-dated by more than
26 five (5) years.  Hangartner Supp. Decl. Exh. JJ at ¶17.  A senior mark cannot infringe a junior
27 mark.  Thus, if there is a likelihood of consumer confusion as between the One Icon mark and the
28

1  O'Neal Angular O' mark, it is O'Neal that is infringing the trademark owned by Mr. Boinnard and
2  licensed to One Industries.  As a matter of law, One Industries cannot infringe this junior mark,
3  and a declaratory judgment of non-infringement of the O'Neal Angular O' mark is required.
4      Thus, regardless of what theory we divine from O'Neal's pleadings and opposition brief,
5  there is no evidence to support a likelihood of confusion between the accused marks and any
6  senior O'Neal O or O' mark.  Summary judgment should be granted as to O'Neal's infringement
7  claims together with a declaration of non-infringement.

8  **B.**     **There is No Infringement of the O'NEAL Mark**
9      With respect to O'Neal's allegation of infringement of its O'NEAL mark by the name One
10 Industries and use of the One Angular mark, even O'Neal's own expert declined to offer an
11 opinion that there was a likelihood of confusion between these marks.  Sarabia Deposition [47:24
12 – 49:9].  They look nothing alike, sound nothing alike, and have completely different meanings –
13 one an Irish surname, the other a reference to the top position in motocross.  The fact that O'Neal
14 found one old advertisement where the "AL" in the name O'Neal was obscured does not change
15 the analysis.  Trademarks are not viewed by examination of their parts, but rather as a whole as
16 they appear in the marketplace.  *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1082
17 (9th Cir. 2005).

18 **C.**     **There is No Trade Dress Infringement or Unfair Competition**
19     O'Neal has not even identified the allegedly infringed trade dress that it claims to be able
20 to protect.  In its pleadings, O'Neal has made clear that its trade dress is the use of the name
21 "O'NEAL" at a slight slant on the chin bar area of the helmet.  It cannot and does not claim that
22 use of any logo at a slight slant on the chin bar infringes its trade dress, as companies have been
23 placing logos in this natural location for years.  Thus, this claim is the same as its claim of
24 infringement of the O'NEAL mark, and O'Neal's unfair competition claim is clearly dependent on
25 its infringement claims.

**D.   O'Neal has Pursued Baseless Claims At Substantial Cost to One Industries**

O'Neal has pressed this case despite the fact that: (1) it does not even have a colorable argument to support its claim to the exclusive right to use an O on motorcycle products; (2) it has no evidence of confusion between its Rounded O' mark and the accused marks, which are not at all similar; (3) its only alleged evidence of confusion relates to its Angular O' mark, which is undisputedly junior to the alleged infringing One Icon mark; and (4) its own expert would not even opine as to its allegation of infringement of its O'NEAL word mark.

O'Neal started this case with a threat based on false statements about the seniority of its Angular O' mark, and has finished it with arguments based on false statements regarding the evidence on the issue of intent.  O'Neal's assertion that One Industries has driven up its legal fees is further example of the extreme positions that O'Neal is willing to take.  O'Neal complains because One Industries: (1) proposed a private mediation, which it agreed to conduct in Los Angeles before a mediator selected by O'Neal; (2) complied with the meet and confer requirements of the local rules in connection with a potential motion to re-open discovery; and (3) attempted to accommodate O'Neal's counsel in scheduling third-party depositions.  These actions were not only proper, they reflect the type of professional, civil practice that we expect in San Diego and that this Court demands in its local rules.  This is an exceptional case that merits a fee award for One Industries and Mr. Boinnard.

### III.  CONCLUSION

For all of the foregoing reasons, One Industries and Mr. Boinnard respectfully request that judgment be entered finding no infringement or unfair competition, and denying O'Neal's claims for cancellation.

DATED:  October 5, 2007

X-PATENTS, APC

By   s/ Jonathan Hangartner
Email: jon@x-patents.com
Attorneys for Plaintiff/Counter-Defendant ONE INDUSTRIES, LLC and Third-Party Defendant LUDOVIC BOINNARD