# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONE INDUSTRIES, LLC,<br>a limited liability company,<br><br>     Plaintiff,<br><br>     v.<br><br>JIM O'NEAL DISTRIBUTING,<br>INC.,<br>a corporation,<br><br>     Defendant. | ) ) ) ) ) ) ) ) ) ) Case No. 06 CV 1133 JAH (AJB) ) ) ) |
| JIM O'NEAL DISTRIBUTING,<br>INC.,<br><br>     Counterclaimant<br><br>     v.<br><br>ONE INDUSTRIES, LLC.,<br><br>     Counterdefendant. | ) ) ) ) ) ) ) ) ) ) |

## REBUTTAL EXPERT REPORT OF JEFFREY M. SAMUELS

1.  This constitutes an Expert Report prepared by Jeffrey M. Samuels pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) in connection with the above-referenced matter. I have been retained as an expert in the above-captioned case by counsel for Plaintiff/Counterdefendant One Industries, LLC to offer expert opinions regarding various trademark issues raised in the instant matter. The opinions set forth herein are preliminary in nature and may be supplemented in the future based on additional information provided to me.

2. In reaching my opinions I have had the benefit of reviewing the materials identified in Exhibit A to this report.

3. I have been involved in the field of intellectual property law, with a primary concentration in trademark and unfair competition law, since 1976. Attached as Exhibit B to my report is a copy of my curriculum vitae (including a list of my publications during the past ten (10) years, which further describes my professional experience and qualifications. I note that from November 1987 to January 1993, I was the Assistant Commissioner for Trademarks at the United States Patent and Trademark Office (PTO). As Assistant Commissioner for Trademarks, I served as the chief management official for the trademark division of the PTO. As such, I was actively involved in, and responsible for, the PTO's trademark operations and all facets of the administration of the federal registration system, including implementation of the provisions of the "Trademark Law Revision Act of 1988," and established policies and procedures relating to the federal registration system. My responsibilities also included general oversight and management of the Trademark Trial and Appeal Board.

4. I am currently the David L. Brennan Professor of law and Director of the Center for Intellectual Property Law and Technology at the University of Akron School of Law. My teaching responsibilities include courses in trademark and unfair competition law, trademark prosecution, international intellectual property, and introduction to intellectual property. Prior to joining the faculty at the University of Akron, I served as an adjunct

2

professor at the George Washington University School of Law and George Mason University School of Law.

5.  I have authored or co-authored numerous articles in the area of intellectual property law, am the editor of the publication "Patent, Trademark and Copyright Laws" and have made many presentations to professional, educational, and other organizations, including congressional panels, on trademark and other intellectual property law issues.  I also serve as a panelist under ICANN's Uniform Domain Name Resolution Policy and as an arbitrator/mediator of trademark and related unfair competition matters.

6.  Attached as Exhibit C to my report is a list of the cases in which I have either testified at trial or been deposed during the past four (4) years.

7.  I will be compensated at the rate of $475 per hour.  My compensation does not depend upon the outcome of this litigation.

8.  A major issue in this case is which party has better trademark rights in what is referred to in the complaint as the "One Icon Mark" and in the counterclaim as a stylized "O," as used on motorcycle helmets.  The specific marks in issue are reflected in paragraph 5 of the complaint and in paragraph 56 of the counterclaim.

9.  Trademark rights in the U.S. are based on priority of use of the mark in commerce.  That is, the first party to use the mark in commerce has rights to such mark and may be able to

3

prevent others from using such mark, or a confusingly similar mark, upon a determination that the latter's use is likely to cause confusion.

10. In this regard, I note that Plaintiff's licensors filed an application with the PTO to register the "One Icon Mark," as used on motorcycle helmets, on April 28, 2004. The application claimed a date of first use in commerce of December 19, 2003. Defendant/Counterclaimant filed an application to register its stylized "O" mark, as used in connection with retail, wholesale and distributorship services involving a variety of goods, including helmets, on May 8, 2006. This application claimed a date of first use in commerce of December 17, 2003, two days prior to Plaintiff's claimed date of first use in commerce.

11. The evidence also establishes, however, that Plaintiff's licensors obtained several U.S. registrations for the "One Icon Mark" and the "One Angular Mark," as used on a variety of motorcycle racing products, including clothing, gear, stickers, decals, fenders, handle bar pads and seat covers for motorcycles. These registrations claim a date of first use in commerce of September 1999.

12. Under the "related goods" doctrine, Plaintiff's rights in the "One Icon Mark" for motorcycle helmets may relate back in time to its use of the mark on other, related motorcycle racing products, provided the relevant public would believe that such helmets come from the same source as the other goods. It would appear that, given the relatedness of motorcycle helmets and the goods on which the "One Icon Mark" was used

4

as early as September 1999, Plaintiff may rely on September 1999 as its priority date. Thus, Defendant/Counterclaimant would have to establish a date of first use earlier than September 1999 in order to establish priority.

13. The counterclaim and the Expert Report of Antonio R. Sarabia II (see pages 7-8) document the evolution of the Defendant/Counterclaimant's use of its "O" mark.   It appears that Defendant/Counterclaimant began use of an "O" mark on motocross clothing, gear, parts, and accessories as early as 1991, and that the mark was altered in 1992, 1993, 1997, and 2003.  To the extent Defendant/Counterclaimant may attempt to rely on any or all of its pre-September 1999 uses of its "O" mark to establish priority, consideration must be given to whether the so-called tacking doctrine is applicable.

14. Under certain circumstances, a trademark owner may be able to tack its first use date in an earlier version of a mark onto a subsequent mark.  Tacking permits a mark owner "to claim priority in a mark based on the first use date of a similar, but technically distinct mark – but only in the exceptionally narrow instance where the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark. ... The standard for tacking ... is exceedingly strict: The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749 (9th Cir. 2006).

5

15. It appears highly problematic that Defendant/Counterclaimant will be able to tack on its earlier uses of its "O" mark to establish priority of use. In this regard, I note that the trial judge in this case, in ruling on certain motions filed by Plaintiff, agreed with Plaintiff's argument that "[e]ven a cursory inspection makes clear that, as a matter of law, [Defendant's "O" marks are] not a single mark," since the "shape, font, orientation, placement, and color of the marks have all changed dramatically over the years" and given the fact that "O'Neal has sought at least two separate trademark registrations with respect to the [] identified marks." The trial court was "unpersuaded by O'Neal's claim that it uses only one mark that has been slightly altered over the years because two of the marks alleged to be one have been registered separately and the marks presented appear … to be more than just slightly different." Based on my review of O'Neal's "O" marks and of the relevant law, I agree with the court's analysis.

16. Mr. Sarabia, in his Expert Report, notes (at page 13) that O'Neal has used a "variety" of "O" designs. As a general proposition, trademark owners are best advised to use their mark in a consistent manner. This facilitates the ability of consumers to associate such mark with a particular source, which is the hallmark of what a trademark is supposed to do. While Mr. Sarabia offers his view that each of O'Neal's marks retain a "core element" consisting of a rounded oval, the court has already determined that O'Neal's marks have changed "dramatically" over the years.

17. Thus, to the extent there may be a likelihood of confusion regarding the parties' respective uses of their "One Icon Mark" and "O" mark, it appears that Plaintiff enjoys

6

priority of use. The same analysis would apply to a claim that Plaintiff's use of the so-called "One Angular Mark" infringes upon Defendant/Counterclaimant's "O" mark. As a result, to the extent a likelihood of confusion exists, Defendant/Counterclaimant would be the infringer.

18. With respect to the issue of likelihood of confusion, the Expert Witness Report of Thomas E. Lambert, CPA, indicates, based on his review of the evidence, that the parties occupy two very different market positions. Such fact would lessen any likelihood of confusion since it would reduce the likelihood that the parties' products compete for the same customers. Mr. Lambert's report also notes that Plaintiff's allegedly infringing "Kombat" and "Trooper" helmets sell for $169 to around $300. In determining whether a likelihood of confusion exists, courts, typically, find that the more expensive an item, the less likely confusion will occur. This is because, in such situations, consumers may be expected to exercise greater care in making their purchasing decision. Given the cost of Plaintiff's allegedly infringing helmets, it may be expected that prospective consumers will exercise great care before making a purchase. Under such circumstances, it is less likely that a prospective purchaser will purchase one of Plaintiff's helmets in the mistaken belief that he/she believed was purchasing one of Defendant/Counterclaimant's helmets.

19. Another relevant likelihood of confusion factor is the existence of actual confusion. Actual confusion is the best evidence of a likelihood of confusion. However, to be probative, the evidence of actual confusion must relate to confusion by the relevant

7

public resulting from the parties' use of their respective marks and must be more than "de minimis" in nature. I am aware from discussions with Plaintiff's counsel, as well as my review of Mr. Lambert's report and Mr. Sarabia's report, that Defendant/Counterclaimant has alleged multiple instances of actual confusion. These include the shipment by a helmet supplier of an O'Neal sample helmet to One Industries and of three One Industries sample helmets to O'Neal, an undocumented claim that a consumer was injured while using a One Industries helmet and that the helmet was returned to O'Neal, a misidentification of a One Industries logo sweatshirt as an O'Neal product by the owner of several motorcycle publications, an online retailer's identification on its website of certain One Industries helmets as O'Neal helmets, and the receipt by O'Neal of telephone calls requesting helmets made by One Industries. In my opinion, these instances provide an insufficient basis upon which to conclude that the relevant public, as a result of confusion resulting from the parties' concurrent use of their respective marks, is likely to purchase a One Industries helmet when he/she intended to purchase an O'Neal helmet .

20. Mr. Sarabia, in his report, offered his view that Plaintiff's licensors intended to take advantage of the reputation of O'Neal's "O" mark by entering the helmet market with an "O" logo. However, the evidence indicates that Plaintiff's licensors were using the allegedly infringing marks for four years on various motorcycle-related products before extending such use to motorcycle helmets. Such an expansion may be viewed as a simple brand extension rather than any attempt to trade on any goodwill O'Neal may possess in its marks.

8

21. The opinions stated in this written report are based on my education, background, knowledge, and experience in trademark law and at the PTO and my review of the information currently available to me. I plan to continue my study of the matters discussed herein, including a review of documents that may yet be produced, court papers, reports of other experts, rebuttal reports of experts, and testimony. Accordingly, as noted above, I reserve the right to expand upon or modify my opinions as my studies continue and to supplement my opinions in response to any additional information, including demonstrative evidence, that becomes available to me in connection with any matters raised by the Defendant/Counterclaimant and/or to any opinions provided by the expert(s) retained by the Defendant/Counterclaimant.

Date: __6/22/07__                                  _____

Jeffrey M. Samuels

## EXHIBIT A

## LIST OF DOCUMENTS REVIEWED

1. Complaint for Declaratory Judgment

2. Answer and Counterclaims

3. Expert Report of Antonio R. Sarabia II

4. Expert Witness Report of Thomas E. Lambert, CPA

5. Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss and for More Definite Statement; and Granting in Part and Denying in Part Third Party Defendants Ludovic Boinnard and Marc Blanchard's Motion to Dismiss and For More Definite Statement

6. Printouts from PTO's TARR Database relating to U.S. Registration Nos. 2831710, 2831709, 2842641, 2946193, 2894614, 2894616, 2894615, and 2970422 and Application Serial No. 78/78750

7. One Industries Spring 2007 catalog

8. Selected pages from One Industries Helmets Catalogs 2005, 2006, and 2007

9. Selected pages from O'Neal's 2001, 2004, and 2006 catalogs

# EXHIBIT B

# JEFFREY M. SAMUELS

**Phone (330) 972-7898 Fax (703) 566-5500 E-mail: JeffreyMSamuels@aol.com**

## EMPLOYMENT

**David L. Brennan Professor of Law and Director, Center for Intellectual Property Law and Technology,** University of Akron School of Law, Akron, Ohio, August 1998 to present.

- Serve as primary contact between law school and intellectual property law bar and community and IP Center Advisory Council, including work on development.
- Develop, implement and staff curriculum, including Master of Laws in Intellectual Property.
- Program recently ranked nationally #5 for IP curriculum offerings and #24 overall.
- Coordinate and organize annual intellectual property law symposium, continuing legal education and guest lectures, now largest in state.
- Initiated and implemented new student run IP journal.
- Oversee establishment of summer study IP program in Geneva, Switzerland.
- Courses taught: Trademark and Unfair Competition Law, Introduction to Intellectual Property Law, Intellectual Property Policy and Politics, International Intellectual Property Law, Current Issues in Intellectual Property Law, Patent Law.

**Visiting Professor, Center for Studies in International Industrial Property (CEIPI),** Robert Schuman University, Strasbourg, France, 2003 to present. Serve as guest lecturer on U.S. and international trademark law.

**Jeffrey M. Samuels, Esq.** January 1999 – present; **Law Office of Jeffrey M. Samuels, P.C.,** June 1996 – August 1998. Practice trademark and related unfair competition law, including expert witnessing, consulting, alternative dispute resolution, prosecution and litigation. Government relations manager for the International Trademark Association, November 1994-July 1997 (directed the introduction, consideration and enactment of "The Federal Trademark Dilution Act of 1995"). Panelist: ICANN's Uniform Domain Name Resolution Policy; International Trademark Association and the Center for Public Resources' ADR Program; ADR Neutrals for the U.S. District Court for the Northern District of Ohio; National Arbitration Forum's Intellectual Property Arbitration Panel.

**Professorial Lecturer in Law**, 1993 – 1998. The George Washington University Law School. 1998. George Mason University School of Law. Taught trademark law and provided support for the program. Guest lecturer on international intellectual property law, intellectual property law legislation. Lecturer Intellectual Property law program for Taiwanese attorneys and government officials.

**Partner**, Spencer & Frank, March 1993 - June 1996.  Practiced trademark and related unfair competition law and copyright law, including prosecution, expert witnessing, consulting and litigation.

**Assistant Commissioner of Patents and Trademarks**, November 1987 - January 1993. Head of the trademark division of the U.S. Patent and Trademark Office.
Established and implemented policy, procedures and strategy on all facets of trademark operations: legal and legislative issues, international cooperation, external relations, rulemaking, budget, personnel, automation, labor/management issues, statutory Member, Trademark Trial and Appeal Board (TTAB). May 1992 - January 1993.  Assigned additional responsibilities to oversee activities of the Offices of the Assistant Commissioner for Information Systems and the Assistant Commissioner for Public Services and Administration and to serve as principal liaison to the Department of Commerce's Office of Inspector General.

**Acting Assistant Secretary of Commerce and Commissioner of Patents and Trademarks**, November 1989 - March 1990 and as needed 1987 - 1993.
Responsible for overall management of the U.S. Patent and Trademark Office, including congressional and other external relations.

### SIGNIFICANT ACCOMPLISHMENTS IN GOVERNMENT SERVICE

- Implemented "Trademark Law Revision Act of 1988."
- Headed U.S. delegation to the World Intellectual Property Organization's Working Group meetings on implementation of the Madrid Protocol on the International Registration of Marks and on Harmonization of the Laws Relating to Trademarks.
- Implemented quality improvement initiatives, including creation of Office of Trademark Quality Review and total quality management program.
- Author of major TTAB policy decisions relating to amendments to identifications of goods and services and examiner reconsideration.

**Managing Editor**, May 1982 - October 1987; **Legal Editor**, August 1976 - April 1982. BNA's Patent, Trademark & Copyright Journal; **Founder**, World Intellectual Property Report; **Chair**, Professional Conferences; The Bureau of National Affairs, Inc.

## CONGRESSIONAL TESTIMONY

House Judiciary Subcommittee on Courts and Intellectual Property:
       "Abrogation of States Eleventh Amendment Immunity from Patent Infringement,"
       February 1990. Cited by the Supreme Court of the United States in Florida Prepaid
       v. College Savings Bank, 527 U.S. 627, n.6 at 641 (1999).
       "Computers and Intellectual Property," March 1990.
       "Copyright Protection for Architectural Works," March 1990.
       "Madrid Protocol Implementation Act of 1993," May 1993.
       "Federal Trademark Dilution Act of 1995," July 1995 (drafted testimony only; did not
          testify)
       "H.R. 3163, The 'Trade Dress Protection Act'," February 1998.
       "Hearing on Dilution and Anticounterfeiting Bills," May 1998.

House Appropriations Subcommittee on Commerce, State, Justice, the Judiciary and
       Related Agencies:
       "1991 Budget Request of U.S. Patent and Trademark Office," February 1990.

## EDUCATION, BAR MEMBERSHIPS AND ORGANIZATIONS

Albany Law School, Doctor of Jurisprudence, May 1975.

Colgate University, Bachelor of Arts with Honors, May 1972.

Ohio State Bar (1999); District of Columbia Bar (1978); Virginia State Bar (1977); New York State Bar (1976); U.S. Court of Appeals for the Federal Circuit (1996); U.S. District Court for the Eastern District of Virginia (1997).

American Intellectual Property Law Association, Chair, Committee on Trademark Legislation 1999-2000; Vice-Chair, Committee on Trademark and Trade Identity Unfair Competition Law 1994-1995; Chair, Trademark Office Subcommittee 1997-2000; Staff Editor, AIPLA Quarterly Journal 1996-2000, authored congressional testimony on legislation to amend federal dilution statute 2002.

The International Trademark Association, Government Relations Manager 1995-1997; Member, Brief Amicus Committee 1997-1999, Member, Meetings Committee 2000-2002.

American Bar Association Section of Intellectual Property Law, Co-chair, Trademark Legislation Committee, 2006-2007, Chair, Trademark Dilution Task Force, 2005-2006; Co-chair, International Trademark Laws and Treaties,2005-2006,Chair, Federal Trademark Legislation Committee 1994-1995; Chair, Sovereign Immunity Subcommittee, 2002-2004; Chair, Intent-to-Use Subcommittee 1997-98; Chair, Trade Dress Subcommittee 1998-99.

Cleveland Intellectual Property Law Association, President, 2004-2005; President-Elect 2003-2004; Program Chair 1999-2002; Board Member, 2001-2002.

Advisory Board Member, BNA's Patent, Trademark & Copyright Journal, 1993-present.

Advisory Board Member, World Intellectual Property Report, 1993-present.

## PUBLICATIONS (Excluding Proceedings and Course Books)

Samuels, Jeffrey M. and Samuels, Linda B. "Trademark Jurisprudence of Judge Rich," 56 American University Law Review, No. 4.

Samuels, Jeffrey M. and Samuels, Linda B. "Recent Developments in U.S. Trademark Law: A Confusing State of Affairs," Journal of the Patent and Trademark Office Society, Vol. 88 No.4, April 2006, pp. 361-377.

Samuels, Jeffrey M. and Samuels, Linda B. "Precedential Court Decisions Affecting PTO Trademark Practice: The Year in Review," Journal of the Patent and Trademark Office Society, Vol. 88 No. 3, March 2006, pp. 203-216.

"Major Trademark Decisions Relating to PTO Practice: The Year in Review," Journal of the Patent and Trademark Office Society, Vol. 87. No. 5, April 2005, pp. 298- 310, co-author.

"Patent Trademark and Copyright Laws" (BNA: 1983, 1984, 1985, 1987, 1989, 1991, 1992

Supp., 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, June 2005, 2006, June 2006, 2007).

"International Trademark Protection Streamlined: The Madrid Protocol Comes into Force in the United States," The University of Georgia School of Law Journal of Intellectual Property Law, Vol. 12 Fall 2004, No. 1., pp. 151-161, co-author.

"Key Trademark Decisions Relating to PTO Practice," Journal of the Patent and Trademark Office Society, , Vol. 86, No. 4, April 2004, pp. 247-279, co-author. Selected for translating into Japanese and reprinted in Journal of the Japanese Group A.I.P.P.I, Vol. 49, No. 10, (Fall 2005) pp. 12-27.

"Internet Domain Names: The Uniform Dispute Resolution Process," American Business Law Journal, Vol. 40, No. 4, Summer 2003, pp. 885-904, co-author.

"Notable Court Decisions Affecting PTO Trademark Practice, " Journal of the Patent and Trademark Office Society, Vol. 85, No. 3, Mar. 2003, pp. 191-218, co-author.

"Trademark Decisions Affecting PTO Practice in 2001," Journal of the Patent and Trademark Office Society, Vol. 84, No. 4, April 2002, pp. 310-330, co-author, reprinted in Japanese version of AIPPI Journal, 2002; translated into Japanese and reprinted Journal of the Japanese Group A.I.P.P.I, Vol. 47, No. 9, pp. 18-30.

"Recent Court Opinions Affecting USPTO Practice: The Year in Review," Journal of the Patent and Trademark Office Society, Vol. 83, No.9, Sept. 2001, pp. 619-639, co-author.

"Trade Dress Undressed: Wal-Mart v. Samara, " AIPLA Quarterly Journal, Vol. 29, No. 1, Winter 2001, pp. 43-63, co-author, Selected for reprinting in Intellectual Property Law Review 2002 (West Publishing Co.).

"Supreme Court Makes Protection of Product Design Trade Dress More Difficult," Journal of the Academy of Marketing Science, Vol.29 No. 1, Winter 2001, pp. 108-109, co-author.

"Trade Dress Protection: The Issue of Distinctiveness and Potential Conflicts," Northern Kentucky Law Review, Symposium Issue – Intellectual Property Law: Issues in the New Millennium, Vol. 27 No. 5, Fall 2000, pp. 1041-54.

"Highlights of Opinions Affecting PTO Practice," Journal of the Patent and Trademark Office Society, Vol. 82, No. 5, May 2000, pp. 311-335, co-author.

Trademark Registration Practice by James E. Hawes (West).  Primary contributor to 1999 and 2000 updates.

"Principal Opinions Affecting PTO Trademark Practice," Journal of the Patent and Trademark Office Society, Vol. 82 No. 4, April 1999, pp. 281-302, co-author.

"The Madrid Protocol and Trademark Harmonization," in Kenneth L. Port et al., Cases and Materials in International Intellectual Property, Carolina Academic Press 1999, forthcoming.

"Significant Trademark Decisions," Journal of the Patent & Trademark Office Society, Vol. 80

No. 7, July 1998, pp. 453-468, co-author.

"Noteworthy PTO Trademark Decisions," Journal of the Patent & Trademark Office Society, Vol. 80 No. 4, April 1998, pp. 231-240, co-author.

Trademark Protection and Practice by Jerome Gilson (Matthew Bender & Co.). Associate Editor of treatise, 1993–1998.

Trade Marks, Trade Names and Unfair Competition, World Law and Practice by John Olsen and Spyros Manlatis (FT Law and Tax, London). Contributor of section of treatise relating to U.S. trademark law and practice, 1994-present.

"Formulating an Effective Association Intellectual Property Program," ASAE Association Law and Policy and ASAE Law Compendium, co-author, 1997.

"Recent Developments in Trademark Law and Practice," Journal of the Patent & Trademark Office Society, Vol. 79, March 1997, pp. 181-190, co-author.

"The Trademark Office as a Government Corporation," Fordham Intellectual Property, Media & Entertainment Law Journal, Vol. 7, Autumn 1996, pp. 137-145, co-author. Cited in Senate Report 105-42 on the "Omnibus Patent Act of 1997," 105th Congress, First Session, July 1, 1997, p.45.

"Recordal of Fastener Insignia Under the Fastener Quality Act," American Fastener Journal, Vol. 13, No. 6, Nov./Dec. 1996, pp. 4, 10, co-author, reprinted World Intellectual Property Report, Vol. 11, pp. 24-25, January 1997, co-author.

"Color Trademarks: Protection Under U.S. Law," Journal of Public Policy and Marketing, Vol. 15, No. 2, Fall 1996, pp. 305-307, co-author.

"Famous Marks Now Federally Protected Against Dilution," Journal of Public Policy and Marketing, Vol. 15, No. 2, Fall 1996, pp. 306-310, co-author.

"Protection For Color Under U.S. Trademark Law," AIPLA Quarterly Journal, Vol. 23, No. 1, Winter 1995, pp. 129-152, co-author.

"The Community Trademark," World Intellectual Property Report, April 1996, pp. 114-116, co-author.

"The Madrid Protocol to Enter into Force April 1," World Intellectual Property Report, March 1996, pp. 86-87, co-author.

"The Changing Landscape of International Trademark Law," George Washington Journal of International Law and Economics, Vol. 27, No. 2 & 3, 1994, pp. 433-455, co-author. Excerpted in Goldstein, Copyright, Patent and Related State Doctrines: Cases and Materials on Intellectual Property Law (Foundation Press, 1999), pp. 1045-1048; excerpted in Dinwoodie et al. International Intellectual Property Law and Policy (Lexis, 2001); excepted in Dinwoodie et al. International and Comparative Trademark and Unfair Competition Law (Lexis, 2002 forthcoming). Selected as finalist for the Ladas Award sponsored by the Brand Names Education Foundation.

"The Madrid Protocol From the U.S. Perspective," Journal of Japan Trademark Association," Vol. 21, 1994, pp. 23-30 (in Japanese), Proceeding, pp. 99-113 (in English).

"The Madrid Protocol and Harmonization of Trademark Laws," Canadian Intellectual Property Review, Vol. 10, No. 3, May 1994, pp. 667-668.

"European Community Trademark: What Every U.S. Owner and Practitioner Should Know," Trademarks America, June 1994, pp. 9-11.

"Patent and Trademark Office Practice," The Journal of Proprietary Rights, (Part I) Vol. 5, No. 9, September 1993; (Part II) Vol. 5, No. 10, October 1993; (Part III) Vol. 5, No. 11, November 1993; (Part IV) Vol. 5, No. 12, December 1993.

"House Panel Holds Hearing on Madrid Protocol," Dinwoodey Center Journal, The George Washington University National Law Center, September 1993, pp. 3-4.

"U.S. Perspective on the Madrid Protocol," European Intellectual Property Review, Vol. 15, November 1993, pp. 418-25, co-author.

"Reflections on Management of the PTO," Journal of the Patent and Trademark Office Society, April 1993, pp. 247-256, co-author.

"Color Trademarks: Shades of Confusion," The Trademark Reporter, Vol. 83, August 1993, pp. 554-570, co-author.

"Letter To The Editor" [regarding "The Madrid Protocol - Some Reflections"], The Trademark Reporter, Vol. 82, September - October 1992, pp. 810-813.

"Questions and Answers on Intent to Use," Patent and Trademark Office Society, Vol. 71, No. 8, August 1989, pp. 585-599, co-author.

"Analysis of Trademark Law Revision Act of 1988," World Intellectual Property Report, February 1989, pp. 34-35.

"New Developments in Copyright Protection of Computer Software," International Journal of Legal Information, October - December 1987, pp. 195-200, co-author.

"Semiconductor Chip Protection Act of 1984: An Analytical Commentary," American Business Law Journal, Winter 1986, pp. 601-616, co-author.

"The Patentability of Computer-Related Inventions," Corporation Law Review, Spring 1983, pp. 144-155, co-author.

"Contributory Infringement: Relief For the Patent Owner," Corporation Law Review, Fall 1981, pp. 332-345, co-author.

## SELECTED PRESENTATIONS

Akron Kiwanis Club, January 2002.

Agency for International Development, July 1998.

ALI-ABA Video on the Trademark Law Revision Act, December 1989.

All Ohio Intellectual Property Law Conference, September 1995, September 2000; September 2003.

American Bar Association Section on Intellectual Property Law, March 1988, April 1994, June 1999, April 2002; March 2003, June 2003.

American Intellectual Property Law Association Trademark and Unfair Competition Law Committee, October 1988; January and October 1989; October 1990; January 1993, May 1996, January 1998, April 1999.

American Intellectual Property Law Association, May 1997, October 1999, October 2000. October 2006.

American Law Institute - American Bar Association Continuing Legal Education Spring Program, April 1992; April 1993.

American Society of Association Executives, October 1997.

Annual Meeting of The United States Trademark Association, May 1988; May 1991; May 1992.

Arter & Hatten, September 1997.

Asian Pacific Legal Institute, July 1996; July 1997.

Association of the Bar of the City of New York Section on Unfair Competition, March 1990.

Bar Association of District of Columbia Patent, Trademark & Copyright Section, December 1988; February 1993.

Bar Association of Metropolitan St. Louis, April 2002.

BNA's 12th Annual Patent Law Conference, November 1988.

Brooklyn Law School Symposium for Business Lawyers, February 1989.

Carolina Patent, Trademark and Copyright Law Association, April 1989; November 1989.

Center for American and International Law, November 2005.

Chicago Bar Association, June 1988; May 1989; June 1990; May 1991; May 1992.

Civic Forum of the Air, July 2003.

Cleveland Intellectual Property Law Association, February 1993, November 1998, November 1999, November 2001, January 2003, February 2005.

Columbus, Ohio Intellectual Property Law Association, February 2005.

European Community Trademark Conference, March 1995.

Executive Management Institute, January 1990.

Federal Circuit Bar Association, May 1996.

Federal Judicial Center Russian Judges Conference, November 1995.

Florida State Bar Intellectual Property Law Section, November 1999, November 2002.

Forum on the Trademark Law Revision Act of 1988, The United States Trademark Association, February;      March; June 1989.

George Mason University School of Law Intellectual Property Law Program, March 1998, March 1999,

 March 2000.

George Washington University Intellectual Property Law Program, February 1993, November 1994; March 1995, October 1995, March 1996, October 1997, March 1998, October 1998, March 1999, October 2000, October 2001.

Government Patent Lawyers Association, March 1989.

Indiana Patent Law Association, July 1989.

Insight Intellectual Property Program, November 1997, April 1999, November 1999.

Intellectual Property Owners/PTO Day Program, December 1989; December 1990; December 1991; December 1992, December 1996, December 1997, December

1998, December 1999, December 2000, December 2002, December 2003, December 2004, December 2005.

Intellectual Property Owners Annual Meeting, November 1999.

Intellectual Property Section of the State Bar of California, October 1988; November 1990; September 1992, April 1994, October 1994.

International Intellectual Property Alliance, March 2003.

International Trademark Association Annual Meeting, May 2002; Trademark Basics Program, December 2002.

International Trademark Association Forum, March 1995.

Iowa Intellectual Property Law Association, October 1990; September 2003, October 2006..

Japan Intellectual Property Association, October 1995.

Japanese Trademark Association, February 1994, June 1995, September 1996.

Kent State University Business Students, November 2001.

Lawcast Audiotape on Federal Trademark Dilution Act of 1995, January 1996.

Lexis/Nexis Program on Trademark Law, April 2003.

Los Angeles Intellectual Property Law Association, September 1992, June 1994.

Minnesota Patent Law Association, September 1989.

National Council of Intellectual Property Law Associations, October 1988; October 1989; April 1992; September 1998, September 2000.

New Jersey Intellectual Property Law Association, October 1995.

New York Patent, Trademark and Copyright Law Association, November 1989; February 1990; November 1990, March 1996.

Northern Virginia Chapter of Federal Bar Association, September 1988.

International Intellectual Property Society, March 2003.

Oliff & Berridge CLE Seminar, April 1995, May 1998.

Orange County (California) Patent Law Association, October 1988.

Patent and Trademark Office Trademark Examiners, January 1999, February 2000.

Patent and Trademark Office Program on Patent Law Reform, January 1999.

Patent and Trademark Law Institute of Canada, October 1993.

Patent and Trademark Office Society, February 1993.

Patent Club of Washington and Maryland Patent Law Association, April 1989.

Patent Depository Library Conference, May 1990.

Patent, Trademark and Copyright Law Section of State Bar of Georgia, June 1989.

Patent, Trademark and Copyright Section of District of Columbia Bar Association, April 1989.

Patent, Trademark and Copyright Section of Washington State Bar Association, April 1988.

Philadelphia Public Library Bicentennial Anniversary of First Patent and Copyright Laws, July 1990.

Philadelphia Public Television, July 1990.

Pittsburgh Intellectual Property Law Association, October 1994.

Practising Law Institute, June 1991; June 1992; July 1992; June 1993; July 1993, April 1994, July 1994, July 1995.

San Francisco Intellectual Property Law Association, May 1990, September 1994.

State Bar of Wisconsin, January 1990.

Taiwan Economic and Cultural Office, August 1997.

Trade-Mark Agents Institute, London, March 1990; March 1993.

Trademark and Copyright Committee of Pharmaceutical Manufacturers Association, March 1989.

Trademark Law for Trade Associations, October 1989.

UCLA Law School, September 1992.

The United States Trademark Association Forum on Trademark Basics, September 1991.

The United States Trademark Association Pacific Rim Workshop, September 1992.

The United States Trademark Association Paralegal Forum, September 1988.

University of Akron Annual Intellectual Property Conference, March 1999, March 2000, March 2002.
University of Akron School of Engineering, November 1998.
University of Strasbourg, France, Center for Industrial Property Studies, May 2003.
Virginia State Bar Intellectual Property Law Section, February 1993, June 1994.
Voice of America, June 1989.
Washington State and Oregon Patent Law Associations, March 1992, April 1998.
Worldnet TV, June 1988.
Youngstown, Ohio Inventors Group, October 1999.

10/26/06

**EXHIBIT C**

## LIST OF CASES IN WHICH I HAVE BEEN DEPOSED OR TESTIFIED AT TRIAL DURING THE PAST FOUR YEARS

1. The Hoover Co. v. Oreck Holdings LLC (N.D. Ohio Case No. 5:02 CV 548)

2. Quantum Capital Corp. et al. v. MBNA America Bank, N.A. (N.D. Ga. Case No. 02-CV-0370)

3. United States Polo Association, et al. v. PRL USA Holdings Inc. et al. (Arbitration No. 50 T 133 00578 03)

4. 3M Co. v. Intertape Polymer Group Inc., et al. (D. Minn. No. 03-2651)

5. Century 21 Real Estate v. Century Insurance et al. (D. Az. No. 03-0053)

6. Sunshine Hardware v. Homer TLC, et al. (M.D. Fla. No.2:03 CV-318-FTM-29DNF)

7. Metro One Communications, Inc. v. Starbak Communications (W.D. Wash. No. C04-0425Z)

8. Botopical, LLC v. Hall, Dickler et al. (Sup. Ct. of Calif. (LA County) Case No. SC 080252)

9. Children's Medical Center of Dallas v. Columbia Hospital at Medical City Dallas (N.D. Tex.)

10. Leonard v. Farmers Insurance Exchange, et al. (Dist. Ct. Travis Co., Texas, GN-001634)

11. Netherby Ltd. v. Jones Apparel Group Inc., et al. (S.D.N.Y. 04 CV 07028)

12. Enterprise Rent-A-Car v. U-Haul International, et al. (E.D. Mo. 4:03-CV-01480-CAS)

13. Vital Pharmaceuticals, Inc. v. Red Bull GMBH (S.D. Fla. 05-61704-CIV-ALTONAGA)

14. Louis Vuitton Malletier v. Dooney & Bourke, Inc., (S.D.N.Y. 04-CIV-5316 (RMB) (MHD)