1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10  ONE INDUSTRIES, LLC, a limited        )   Civil No.06CV1133 JAH(AJB)
    liability company,                    )
11                                        )   **ORDER GRANTING**
                        Plaintiff,        )   **PLAINTIFF'S/COUNTER-**
12  v.                                    )   **DEFENDANT'S AND THIRD**
                                          )   **PARTY DEFENDANT'S MOTION**
13  JIM O'NEAL DISTRIBUTING, INC., a      )   **FOR SUMMARY JUDGMENT**
    corporation,                          )   **[Doc. No. 43]**
14                                        )
                        Defendant.        )
15  _____  )
                                          )
16  AND ALL RELATED                       )
    COUNTERCLAIMS AND THIRD-              )
17  PARTY COMPLAINTS.                      )
    _____  )
18

19                          **BACKGROUND**

20          Plaintiff, One Industries, LLC markets and distributes motorcycle racing products

21  and is a licensee of products that use two marks owned by Third Party Defendant Ludovic

22  Boinnard and Marc Blanchard referred to as the "One Icon" mark and the "One Angular"

23  mark.  Defendant/Counter-claimant and Third Party Plaintiff Jim O'Neal Distributing,

24  Inc. ("O'Neal") manufactures and distributes motorcycle and bicycle-related products and

25  owns various trademarks for multiple variations of the marks "O'NEAL" and "O'" that

26  appear on its products.

27          On May 26, 2006, One Industries filed a complaint (Doc. No. 1) seeking

28  declaratory judgment of non-infringement of Defendant O'Neal's trademark rights and a

declaration of no unfair competition as it relates to One Industries' marketing.   O'Neal filed an answer and counterclaim (Doc. No. 6) on August 21, 2006, and a Third Party Complaint (Doc. No. 9) against Boinnard and Blanchard on September 5, 2007.   On September 13, 2006, One Industries filed a motion to dismiss the counterclaim and for a more definite statement (Doc. No. 11).   Boinnard and Blanchard filed a motion to dismiss the third party complaint and motion for a more definite statement (Doc. No. 13) on September 26, 2006.  The motions were granted in part and denied in part and O'Neal was provided the opportunity to file an amended counterclaim and an amended third party complaint.  See Order (Doc. No. 31).   O'Neal filed an amended answer and counterclaim (Doc. No. 38) alleging trademark infringement, trade dress infringement and unfair competition on July 2, 2007, and an amended third party complaint[1] (Doc. No. 40) alleging trademark infringement, trademark cancellations and trade dress infringement against Boinnard[2] on July 3, 2007.  Answers (Doc. Nos. 41, 42) were filed on July 19, 2007.   One Industries and Boinnard filed the pending motion for summary judgment (Doc. No. 43) on August 15, 2007.   O'Neal filed an opposition (Doc. No. 47) on September 28, 2007.   One Industries and Boainnard (collectively "One Industries" "Movants") filed a reply (Doc. No. 48) on October 5, 2007, and objections to evidence (Doc. No. 49) on October 9, 2007.   O'Neal filed a response (Doc. No. 59) to the objections on December 12, 2007.

The motion was originally set for hearing on October 22, 2007, but was vacated because the courthouse was closed due to the fires in San Diego county.  In an order filed October 30, 2007, the Court continued the hearing and the parties later stipulated to continue the hearing date.

The Court heard oral argument on the motion on December 19, 2007.  After a thorough review of the parties submissions and consideration of the parties' argument at

---

[1]O'Neal filed a motion seeking leave to file the amended third party complaint one day late.  Because the amended complaint was filed on July 3, 2007, the motion is denied as moot.

[2]The amended third party complaint does not name Blanchard as a defendant.

1   the hearing, this Court GRANTS IN PART DENIES IN PART the motion for summary

2   judgment.

3                                   **LEGAL STANDARD**

4          Summary judgment is properly granted when "there is no genuine issue as to any

5   material fact and ... the moving party is entitled to judgment as a matter of law."

6   Fed.R.Civ.P. 56(c).  Entry of summary judgment is appropriate "against a party who fails

7   to make a showing sufficient to establish the existence of an element essential to that

8   party's case, and on which that party will bear the burden of proof at trial." Celotex Corp.

9   v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the

10  initial burden of establishing an absence of a genuine issue of material fact.  Celotex, 477

11  U.S. at 323.  Where the party moving for summary judgment does not bear the burden

12  of proof at trial, it may show that no genuine issue of material fact exists by demonstrating

13  that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

14  The moving party is not required to produce evidence showing the absence of a genuine

15  issue of material fact, nor is it required to offer evidence negating the moving party's claim.

16  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990);  United Steelworkers v.

17  Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).  "Rather, the motion may, and

18  should, be granted so long as whatever is before the District Court demonstrates that the

19  standard for the entry of judgment, as set forth in Rule 56(c), is satisfied."  Lujan, 497

20  U.S. at 885 (quoting Celotex, 477 U.S. at 323).

21         Once the moving party meets the requirements of Rule 56, the burden shifts to the

22  party resisting the motion, who "must set forth specific facts showing that there is a

23  genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

24  Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is

25  insufficient.  See Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991).  A

26  material fact is one that is relevant to an element of a claim or defense and the existence

27  of which might affect the outcome of the suit.  The materiality of a fact is thus determined

28  by the substantive law governing the claim or defense.  Disputes over irrelevant or

1   unnecessary facts will not preclude a grant of summary judgment.  T.W. Electrical Service,

2   Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(citing

3   Anderson, 477 U.S. at 248).

4          The court may not make credibility determinations, and inferences to be drawn

5   from the facts must be viewed in the light most favorable to the party opposing the

6   motion.   Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991);   see also

7   Matsushita, 475 U.S. at 587; Anderson, 477 U.S. at 255.

8          Because the likelihood of confusion is a largely factual determination and requires

9   a full record, district courts should grant summary judgment motions regarding likelihood

10  of confusion sparingly.  Than International, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 901

11  (9th Cir. 2002).

12                                    **DISCUSSION**

13         One Industries and Boinnard argue O'Neal cannot prove infringement as a matter

14  of law, the unfair competition claims fail and they are entitled to judgment as to O'Neal's

15  cancellation claims.

16  **I.  Trademark Infringement**

17         O'Neal seeks relief for trademark infringement under 15 U.S.C. §§ 1114 and 1125.

18  O'Neal alleges One Industries' use of the "One Angular" mark infringes on O'Neal's

19  "O'NEAL" mark.  Amended Counterclaim at 14; Amended Third Party Complaint at 11.

20  O'Neal further alleges One Industries' "One Icon" mark infringes O'Neal's "O" mark,

21  because it is confusingly similar to the O'Neal's "O" mark.  Amended Counterclaim at 15;

22  Amended Third Party Complaint at 12.

23         In order to prevail on a trademark infringement claim, a plaintiff must show that

24  1) it is the owner of the asserted marks and 2) the use of the mark by the alleged infringer

25  is likely to cause confusion or mistake or deceives the consumer.   Surfvivor Media v.

26  Survivor Productions, 406 F.3d 625, 630 (9th Cir. 2005).  To show there is a likelihood

27  of a consumer confusing O'Neal's mark with One Industries', the Court considers eight

28  factors, known as the "Sleekcraft" factors, in its determination

(1)     The strength of the mark;

(2)     The similarity of the marks;

(3)     The relatedness of the companies' services;

(4)     The marketing channels used by the companies;

(5)     The alleged infringer's intent in selecting it mark;

(6)     Evidence of actual confusion;

(7)     The likelihood of expansion into other markets, and;

(8)     The degree of care likely to be exercised by purchasers of the good.

Goto.com v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  "Some factors are much more important than others, and the relative importance of each individual factor will be case specific."  Brookfield Communications, Inc. v. West Coast Entertainment, Corp., 174 F.3d 1036 (9th Cir. 1999).

**A.  "One Angular" Mark**



**1.  Strength of Mark**

The strength of a mark is determined by its placement on a continuum of marks from generic through descriptive or suggestive to arbitrary or fanciful. E.& J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992).  Generic trademarks are not entitled to protection.  Marks that are suggestive, arbitrary or fanciful, are "inherently distinctive", "because their intrinsic nature serves to identify a particular source of a product" and are, therefore, awarded maximum protection.   Two Pesos, Inc. v. Taca Cabana, Inc., 505 U.S. 763, 768 (1992).  Marks that are descriptive of a product are not inherently distinctive, but "may acquire the distinctiveness which will allow them to be protected under the Act."  Two Pesos, 505 U.S. at 769.

There is no dispute as to the strength of O'Neal's mark, as O'Neal maintains and Movants agree the "O'NEAL" mark is a strong mark.

1  **2. Similarity of Marks**

2       The similarity of marks "has always been considered a critical question in the

3  likelihood-of-confusion analysis." <u>See</u> <u>GoTo.com</u>, 202 F.3d at 1205.  In considering the

4  degree of similarity, a court should view the marks in their entirety as they appear in the

5  marketplace.  <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1144 (9th Cir. 2002).

6  Additionally, a court should consider the similarity in appearance, sound and meaning. <u>Id</u>.

7       One Industries argues there is no infringement of the "O'NEAL" mark as a matter

8  of law, because the "One Angular" mark is entirely different from the "O'NEAL" mark.

9  They maintain the "One Angular" mark evokes the word one, is abstract and without

10  context it is difficult to make out the word "one."  They further argue the "O'NEAL" mark

11  has an apostrophe, the words are pronounced very differently and the meaning behind the

12  names are different.

13       O'Neal argues the only difference between the "O'NEAL" mark and the "One

14  Angular" mark is an apostrophe and the "AL."  O'Neal contends the stylized version of the

15  "O'NEAL" mark is very similar to the "One Angular" mark.  O'Neal further argues the

16  marks appear similar on helmets and that photos of riders wearing O'Neal gear sometimes

17  make it appear the "O'Neal" says "one" because of the camera angle.  See below.

18
19
20             
21
22
23

24       The Court finds a side-by-side comparison of the two marks demonstrate they are

25  not similar.

26
27
28             

06cv1133

While O'Neal argues the only difference between the marks are the addition of an apostrophe and the "AL," this Court finds those additions create a dramatically different mark. One Industries' mark is the word "one" which represents a number. O'Neal's mark is a name. Additionally, the two words sound completely different. Nor is this Court persuaded that the camera angle of photos of riders wearing helmets with the marks create a similarity between the two marks. This factor weighs heavily against finding a likelihood of confusion.

**3. Relatedness of the Companies' Services/Proximity of the Goods**

"Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1147 (9th Cir. 2002) (quoting <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348 n.10 (9th Cir. 1979). "[T]he more closely related the goods are, the more likely consumers will be confused by similar marks." <u>Id</u>. Movants admit the goods sold are proximate to each other, because the parties both sell off-road helmets and motocross gear.

**4. Marketing Channels**

"Convergent marketing channels increase the likelihood of confusion." <u>Nutri/System, Inc. v. Con-Stan Industries</u>, 809 F.2d 601, 606 (9th Cir. 1987). One Industries admits both companies advertise in the same magazines and sell products in specialty retail stores.

**5. Intent in Selecting the Mark**

The party is not required to demonstrate the infringer "intended to deceive consumers." <u>E.& J. Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1293 (9th Cir. 1992). Intent to confuse may be inferred when the "alleged infringer chooses a mark he knows to be similar to another." <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1148 (9th Cir. 2002) (citing <u>Official Airlines Guides, Inc. v. Goss</u>, 6 F.3d 1385 (9th Cir. 1993).

Movants argue Blanchard and Boinnard indicated they did not consider O'Neal to be a competitor when they selected the marks at issue. O'Neal argues the intent of

Blanchard and Boinnard is inferred from their conduct of distancing the helmet line from One Industries by keeping the words "One Industries" off the helmet, using the "One Icon" logo and launching a new website for the helmets that did not feature the words "One Industries."

In reply, Movants maintain, when they introduced the helmet line, they used the two primary logos they had been using the previous five years, the "One Icon" and the "One Angular"marks.  They further maintain the name "One Industries" appears on the helmet, the box and the product literature accompanying the helmet.  Movants contend the new website is directly linked to its main website, uses the same logos as the main website and prominently identifies the helmets as One Industries products.

There is no evidence to support O'Neal's argument that One Industries sought to distance the helmet line by establishing a separate website.  The evidence demonstrates the website for the helmets is directly linked to the main website and both sites contain One Industries' logos.  Movant's Exh. GG.  Additionally, while the helmet website name, www.onehelmets.com, does not contain the name "One Industries," the content of the website clearly states the helmets are One Industries products.  Id.  Accordingly, there is no evidence of intent to deceive the consumer.

**6.  Evidence of Actual Confusion**

One Industries argues there is no evidence of actual confusion, although both One Industries and O'Neal have co-existed in the motocross industry since 1997 and the marks have been used since 1999.

O'Neal argues "[c]onfusion has permeated the industry at every level as a result of almost identical commercial uses of the O' and One Icon marks."  Opp. at 18.  And further relies upon its discussion of actual confusion as to the "O'" and "One Icon" mark.  It appears O'Neal relies upon confusion between its "O'" logo and the "One Icon" mark to support actual confusion between the "One Angular" mark and "O'NEAL" mark.

After addressing the objections to O'Neal's evidence[3], the only admissible evidence arguably relevant to the "One Angular" and "O'NEAL" marks is Riley Beckinger's testimony regarding phone calls from customers requesting a helmet from O'Neal that is actually sold by One Industries.[4]  The testimony does not include any information as to what caused the confusion.  Even assuming the confusion is between the "One Angular" mark and the "O'NEAL" mark, it demonstrates only a minimum amount of actual confusion between the marks.

**7.  Likelihood of Expansion into other Markets**

Movants argue there is no evidence of further expansion that might bring the two companies into direct competition with regard to future product lines.  O'Neal does not address this factor.

**8.  Degree of Care Likely to be Exercised by Purchasers**

The likelihood of confusion is determined by the "reasonably prudent consumer." Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1060 (9th Cir. 1999).  The "reasonably prudent consumer" is expected to be "more discerning-and less easily-confused" when purchasing expensive items and less discerning and more easily confused when purchasing inexpensive items.  Id.

One Industries contend the degree of care likely to be exercised by the purchaser varies by product.  They argue although t-shirts may be inexpensive, the highly image-conscious industry may still have strong brand differentiation.  They further argue consumers are more likely to exercise a higher degree of care for items such as helmets.

O'Neal argues One Industries' KOMBAT helmet, ROCKSTART helmet and MONSTER helmet are sold from between $99.99 and $199.99, which makes it a different market than a $299.00 purchase.

---

[3]See Discussion of actual confusion as to the "One Icon" mark below.

[4]The testimony regarding the sweatshirt worn by Roland Hinz is not relevant because it contained the "One Icon" logo not the "Angular One" mark. O'Neal's Exh. C, Mescher Depo. at 27:20 - 28:8. Likewise, Rocky Trevino specifically states the confusion he observed involved the "O" logo on the side of helmets. O'Neal's Exh. A, Trevino Depo. at 12:21 - 24.

06cv1133

The Court finds that a customer may not be as discerning when purchasing less expensive items such as t-shirts, but the higher price of the helmets would involve a higher degree of care by purchasers.

**9.  Conclusion**

The Court finds there is a lack of genuine issue of material fact as to the factors in determining likelihood of confusion.  The strength of O'Neal's mark, the relatedness of the parties' goods and the marketing channels weigh in favor of likelihood of consumer confusion.  However, the Court finds the most important factor in this case is the similarity of the marks.  As such the high dissimilarity between the two marks, and the lack of intent to confuse weigh heavily against a likelihood of confusion.  Even assuming the evidence of actual confusion involves the "One Angular" and "O'NEAL" marks, the scant evidence of confusion, in conjunction with the other factors in support of likelihood of confusion, is insufficient to overcome the weight of the dissimilarity of the marks and the lack of intent.  Accordingly, the Court finds the "One Angular" mark does not infringe the "O'NEAL" trademark.  Movants are entitled to judgment on this claim.

**B.  One Icon Mark**



One Industries argues O'Neal's claims regarding the "One Icon"mark are unclear, because it broadly asserted the "One Icon" mark infringes O'Neal's exclusive right to use the "O" mark on motocross related apparel and accessories.  Then O'Neal asserts the "One Icon" mark infringes O'Neal's "O'" mark, specifically the "Rounded O'" mark.  Movants argue O'Neal does not have the exclusive right to use the letter "O" and O'Neal has never used an "O" mark, as it always includes an apostrophe and a stylized form of the "O'" mark.  Movants argue there is no evidence that the letter "O" creates a separate commercial impression on its own to support a claim of exclusivity.  They maintain

evidence establishes other companies use an "O" or "O"-shaped logo on motocross apparel and accessories, including Oakley, OGIO and Alloy.

O'Neal contends they have the exclusive right to use any "O" mark on helmets. O'Neal contends the evolution of their "O" mark is important, because it educated consumers to associate a variety of "O" designs with O'Neal.

In reply, Movants argue O'Neal has neither applied for nor obtained a trademark registration for the letter "O". Therefore, they argue, there is no presumption that O'Neal has any right to exclude others from using the letter "O" on motorcycle related products. Additionally, Movants argue O'Neal has not established secondary meaning with respect to the letter "O".

O'Neal fails to set forth any authority to support its contention that its continued use of the "O'" mark provides it the exclusive right to use the letter "O". O'Neal maintains the evolution of their mark has educated consumers to associate the letter "O" with their products. However, it provides no direct evidence that consumers associate the letter "O" in the motocross industry solely with O'Neal's products.[5] The evidence shows O'Neal's "O'" logos include the apostrophe, which demonstrates, rather, the letter "O" with an apostrophe is associated with O'Neal. Additionally, evidence of other companies "O" shaped logos further supports that the letter "O" is not associated solely with O'Neal. Movant's Exh. U, Oakley advertising image, Exh. V, OGIO advertising image, Exh. W, Excerpts from Alloy MX 2006 Catalog, Exh. X, Excepts from No Fear 2007 Catalog, Exh. SS, No Fear 2007 Catalog, Exh. RR Alloy MX 2006 Catalog. This evidence includes "O" shaped logos on helmets. See Movant's Exh. SS. As such, the undisputed evidence demonstrates O'Neal owns trademarks for the "O'" mark, which is a letter "O" with an

---

[5]Antonio R. Sarabia's expert opinion that consumers "came to associate the core element - resemblence to an 'O' - with products made by O'Neal Distributing which is purportedly based upon his knowledge of development of trademarks and review of O'Neal's "O" logos in adversting and distribution of its products does not sufficiently demonstrate consumers associate "O" designs solely with O'Neal. There is no evidence Mr. Sarabia relied upon consumer surveys or feedback or otherwise obtained any information directly from consumers. Moreover, O'Neal's "O" shaped logos in advertising and products consistently include the apostrophe in the design.

apostrophe.[6]  Amended Counterclaim at 8-10; Amended Third Party Claim at 4 -6, Exhs. 1 - 10; Movant's Exhs. R, S.

**1.  Strength of the Mark**

One Industries argues there are many "O" or "O"-shaped logos in the motocross industry, so O'Neal's mark is not a strong mark.  O'Neal argues its "O'" mark is strong, because it is completely fanciful and the existence of other "O" marks is irrelevant to strength.

O'Neal, however, is mistaken.  The existence of similar marks on similar goods weakens a mark.  See Miss World (UK) Ltd. V. Mrs. Am. Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1988) *abrogation in part on other grounds*; see also   PostX Corp. v. docSpace Co., Inc., 80 F.Supp.2d 1056 (N.D.Cal. 1999).  Movants present evidence of competitors' "O" marks in the motocross industry.  Such as advertising images of Oakley motocross goggles with "O" logo, OGIO gear with an "O" logo, Alloy MX apparel with an "O"-shaped logo and No Fear products with an "O"-shaped logo.  Movant's Exh. U- X, SS, RR. O'Neal's "O" shaped logo is weakened by the existence of other known "O"-shaped logos.

**2.  Similarity of Marks**

Movants argue the marks are not confusingly similar.  They maintain the "One Icon" mark is sharp, pointy and angular, while the "Rounded O'" mark is soft, rounded and oval shape with a prominent apostrophe.  Additionally, the "One Icon" is composed of two clearly separate elements that are symmetrical and often appear in different colors, such as black and red while the "Rounded O'" mark is a single large "O" with a smaller apostrophe and are always in the same color.  They further maintain there is no similarity as to sound, because the "One Icon" does not have a sound.

One Industries further argues the two logos have different meanings: the "One Icon" is two number ones interlaced to be symmetrical -  number one was chosen for its significance to motocross, where the top rider races with the number one place on his

---

[6]Even if O'Neal has the exclusive right to use a letter "O" (without the apostrophe) on helmets or other motocross gear, the Court finds the "One Icon" is not a stylized version of the letter "O" as discussed below.

motorcycle and because it evokes the name "One Industries."   The "Rounded O'" logo is the first letter of the name O'Neal.

O'Neal argues a side-by-side comparison of the marks demonstrates they are both stylized versions of the letter "O" and are almost identical as used in commerce.   In terms of sound, O'Neal argues consumers can easily think the One Icon is an "O", because it is the first letter of "one" which is the first word of One Industries.   O'Neal maintains a jury could reasonably find the "One Icon" would be interpreted by consumers to be an infringing "O"

In reply, Movants argue the O'Neal helmet presented by O'Neal for comparison purposes is irrelevant to the "Rounded O'" mark, because it shows the newer "Angular O'" mark.

The evidence demonstrates One Industries first used the "One Icon" in 1999 on fenders, handle bar pads, seat covers for motorcycles, decals and clothing, and first started using the icon on helmets on December 19, 2003.  See Trademark Registration Forms, Movant's Exh. O at 164, 167, 171, 177, 179, 184, 189, 191, 196, 204.  O'Neal began using the "Rounded O'" mark in 1997.  Amended Counterclaim at 9, 1998 Catalog, O'Neal's Exh. 8; Amended Third party Complaint at 5, 1998 catalog, O'Neal's Exh. 8. O'Neal began using the "Angular O'" mark on December 17, 2003.  Movant's Exh. S at 276, 279.  As such, the proper comparison is between the "One Icon" and the "Rounded O" marks.

This Court finds the two marks are not "almost identical" in appearance as asserted by O'Neal.  See illustrations below.




The "One Icon" does not appear as a stylized "O".  It consists of two angular symbols, described by Movants as interlacing number ones, placed in such a way that a "Z"-shaped space appears between the two. The "Rounded O" is clearly a letter "O" with

a prominent apostrophe and is slightly angled.  Additionally, there is no similarity with sound because the "One Icon", which consists of symbols, has no sound.   The meaning of the two symbols also differ.  The "One Icon" is made up of two interlaced number "1" symbols, while the "Rounded O'" mark is the first letter of the name O'Neal.  Accordingly, the Court finds this factor does not support a likelihood of consumer confusion.

**3.  Relatedness of Companies' Services/Proximity of the Goods**

Both companies sell off road helmets and motocross gear.  Therefore, this factor is not in dispute and supports a likelihood of confusion.

**4.  Marketing Channels**

Likewise, the parties agree both companies advertise in the same magazines and sell products through specialty retail stores.

**5.  Intent in Selecting the Mark**

The parties assert the identical arguments discussed above for the "One Angular" mark.  As provided above, this Court finds there is no evidence that One Industries intended to deceive consumers when choosing the "One Icon" mark.

**6.  Evidence of Actual Confusion**

Movants argue there is no evidence of actual confusion.

O'Neal maintains there is evidence of actual confusion at every level of the industry. In support O'Neal presents the following evidence: KBC America, the manufacturer of its and Movant's helmets mistakenly sent a One Industries product to O'Neal and sent an O'Neal product to One Industries.  Kashare Decl. ¶ 5.  Rocky Trevino, owner of Cycle Parts West, testified he is aware of confusion regarding brand recognition between the parties and one of his employees sought to purchase a helmet he saw on television he thought was an O'Neal product but was a One Industries product. O'Neal's Exh. A, Trevino Depo. at 12:11 - 14:3.  Roland Hinz, owner of Hi-Torque Publishing, the largest publisher of motorcycle-related magazines, confused the logo on a sweatshirt he owned. O'Neal's Exh. C, Mescher Depo. at 27:20 - 28:8; Kashare Decl. ¶ 5.  Mr. Trevino testified to customer confusion.  Trevino Depo. at 17:4 - 6.  Riley Beckinger, a member of O'Neal's

sales staff, testified to receiving calls regarding confusion over the products.  O'Neal's Exh.
D, Beckinger Depo. at 14:24 - 15:4.

Movants filed objections to certain declarations and deposition testimony relied
upon by O'Neal.  They object to Mr. Kashare's statement regarding KBC Manufacturing
as irrelevant, arguing that the lack of information as to what caused the mistake does not
make the mistake more or less likely that there is infringement.  This Court agrees the
information provides no evidence that the mixup was caused by confusion over the logos
and is therefore irrelevant to the issue of actual confusion.  One Industries also objects to
Trevino's testimony regarding customer confusion, because Trevino was not present during
the conversations about which he testified and therefore, lacks personal knowledge.  The
Court sustains the objection to Trevino's testimony regarding his employee's confusion,
because he was not present during the conversation.  However, the objection to his
testimony regarding customer confusion is overruled.  Trevino testified to being present
on the sales floor when customers confused the parties' helmets.  Movants also object to
Kashare's testimony regarding Mr. Hinz's confusion over a sweatshirt containing a One
Industries' logo, because he does not have personal knowledge as to why Hinz was
confused and he does not describe the markings on the shirt.  However, Mr. Mescher
testifies that the design on the shirt was the One Industries' logo "they use today."
Mescher Depo. at 29:6.  Because Mescher's testimony about the conversation, for which
he was present, provides sufficient information to cure any deficiencies of Kashare's
testimony, the Court overrules the objection.

Movants also argue the evidence of actual confusion relates to the "Angular O"
mark that was not used by O'Neal until five years after the "One Icon" mark was used by
One Industries.  As such, Movants argue, the "One Icon" mark has seniority over the
O'Neal "Angular O" mark.  Movants further argue the calls regarding the confusion over
the parties helmets coincided with a mistake by a retailer that listed the One Industries
"Kombat" helmet as the "O'Neal Kombat."  Movants argue this demonstrates O'Neal's
evidence of actual confusion has nothing to do with confusion regarding the trademarks.

This Court agrees with One Industries.

O'Neal presents evidence of confusion.  However, the relevant admissible evidence demonstrates the confusion occurred after the use of the "Angular O'" mark.  Trevino's testimony regarding customer confusion happened within the year prior to his deposition which was taken on May 7, 2007.  <u>See</u> Trevino Depo. at 17:4 - 14.  Additionally, Mescher testifies that the incident with the design on Mr. Hinz's shirt occurred 36 top 48 months before the date of the deposition which was taken on May 1, 2007.  O'Neal began using the "Angular O" mark in December 2003, five years after One Industries began using the "One Icon" mark and well before the two incidents of confusion.  Accordingly, the Court finds this factor weighs against finding of confusion between the "One Icon" mark and the "Rounded O" mark.

**7.  Likelihood of Expansion into Other Markets**

Movants maintain there is no evidence of further expansion that might bring the two companies into direct competition with regard to future product lines.  O'Neal does not address this factor.  The Court gives little weight to this factor.

**8.  Degree of Care Likely to be Exercised by Purchasers**

Movants contend the degree of care likely to be exercised by the purchaser varies by product.  They suggest although t-shirts are inexpensive, the highly image-conscious industry may still have strong brand differentiation.  They further contend consumers are more likely to exercise a higher degree of care for items such as helmets.

The Court finds that a customer may not be as discerning when purchasing less expensive items such as t-shirts, but the higher price of the helmets would involve a higher degree of care by purchasers.

**9.  Conclusion**

The Court finds there is no genuine issue of material fact with respect to the likelihood of confusion factors.  Again, this Court finds the dissimilarity of the marks, along with the lack of actual evidence of confusion and lack of evidence of intent to confuse consumers weighs heavily in support of finding no actual confusion and is not

06cv1133

overcome by the relative strength of O'Neal's mark, the relatedness of the parties' goods and similar marketing channels.  Accordingly, Movants are entitled to judgment as a matter of law on this claim.

## II.  Trade Dress Infringement

O'Neal alleges One Industries' trade dress for its helmets is confusingly similar, and therefore infringes on O'Neal's trade dress.  Amended Counterclaim at 16.  O'Neal also alleges Boinnard authorized and directed the activities of One Industries with respect to the trade dress and is therefore personally liable.  Amended Third Party Complaint at 13. It asserts it is the owner of "distinctive trade dress for motocross helmets" that feature "the word "O'Neal" in a slight slant across the lower part of the helmet in bold typface." Amended Counterclaim at 11.  The helmets are shown below.




To sustain a trade dress infringement claim, the plaintiff must prove (1) its claimed dress is nonfunctional; (2) its claimed dress serves a source-identifying role, because it is either inherently distinctive or has acquired secondary meaning and (3) the infringer's product creates a likelihood of confusion.  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir. 2001).

Movants argue O'Neal has not and cannot claim exclusive right to placement of a logo on the chin bar area of a helmet.  They further argue it is unclear which O'Neal logo is at issue, because in the Amended Counterclaim it shows the angular O'Neal logo introduced in 2003.  However the referenced exhibit shows the rounded O'Neal logo

1   introduced in 1997.  They maintain the analysis of likelihood of confusion is the same as

2   with the O'Neal's trademark claim.

3        O'Neal maintains they have established evidence of actual confusion in regard to

4   the helmets as discussed in their trademark claims.  The confusion, it maintains, is a result

5   of the total design, including size, shape, color combinations, graphics, trademarks and

6   placement of trademarks on the helmet.  O'Neal maintains its trade dress is not related

7   to the use or purpose of the article, rather, it is the way in which One Industries copied the

8   logo placement and style such that there has been actual confusion.  Thus, O'Neal argues,

9   its trade dress is non-functional.  Additionally, O'Neal argues the trade dress serves a

10  source-identifying role, because they contain strong marks, highly recognized in the

11  motocross industry.

12       In reply, One Industries argues O'Neal has not identified the allegedly infringed

13  trade dress.  Movants maintain O'Neal cannot, and does not claim the use of any logo at

14  a slight slant on the chin bar infringes its trade dress.  Thus, they argue, the trade dress

15  claim is the same as the claim for infringement of the "O'NEAL" mark.

16       O'Neal bears the burden of proof on the issue of non-functionality.  Rachel v.

17  Banana Republic, Inc., 831 F.2d 1503, 1506 (9th Cir. 2001).  A product feature is function

18  and "cannot serve as a trademark, if it is essential to the use or purpose" of the product

19  or "it affects the cost or quality of the" product or "if exclusive use of the feature would

20  put competitor at a significant non-reputation-related disadvantage."  Qualitex Co. v.

21  Jacobson Products Co., Inc., 514 U.S. 159, 165 (1995).  One Industries does not dispute

22  the logo placement is non-functional.

23       O'Neal must also demonstrate its claimed dress serves a source-identifying role.

24  O'Neal contends the dress serves a source-identifying role because the "O'NEAL" mark

25  and the "O'" mark are strong marks and highly recognized in the motocross industry.  It

26  essentially argues the claimed dress has acquired secondary meaning.  A product's trade

27  dress has secondary meaning when "the purchasing public associates the dress with a

28  particular source."  Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 843 (9th

1   Cir. 1987). Secondary meaning may be demonstrated by direct evidence, such as consumer

2   surveys and testimony, see Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352 (9th Cir.

3   1985), or circumstantial evidence such as exclusivity, manner and length of use, amount

4   and manner of advertising, amount of sales and the number of customers, and established

5   place in the market.  See Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,

6   198 F.3d 1143 (9th Cir. 1999).  O'Neal offers no evidence to support its contention that

7   the claimed dress has acquired secondary meaning.[7]

8        Having determined O'Neal fails to establish its trade dress serves a source

9   identifying role, the Court finds O'Neal fails to demonstrate a genuine issue as to the trade

10  dress claim.  One Industries is entitled to judgment on the trade dress claim.

11  **III.  Unfair Competition**

12       O'Neal alleges One Industries' and Boinnard's unlawful use of confusing similar

13  trademarks and trade dress constitutes unfair competition under California Business

14  Professions Code § 17200.  Amended Counterclaim at 17; Amended Third Party

15  Complaint at 19.

16       California Business and Professions Code § 17200 defines unfair competition to

17  include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

18  untrue, or misleading advertising . . ."

19       Movants argue if judgment of non-infringement is entered, the claims for unfair

20  competition, which are based on the infringement claims, must also fail.  O'Neal maintains

21  it has proven confusion to sustain its unfair competition claim, as retailers have noted

22  customers seek to purchase helmets from O'Neal, including the "Rockstar" helmet, the

23  "Kombat" helmet and the "Monster" helmet which are all helmets made by One

24  Industries.

25       Because the Court finds no evidence of infringement, the unfair competition claim

26  based upon the infringements claims fail.  One Industries is entitled to judgment as to

27

28       [7]In the introduction to its opposition, O'Neal provides information on its sales, and the amount
    expended in advertising, but fails to address this "evidence" in the context of the trade dress claim.  This
    Court declines to make the arguments on O'Neal's behalf.

1   O'Neal's unfair competition claim.

2   **IV.   Cancellation Claims**

3       O'Neal seeks to cancel, in the Third Party Complaint, Boinnard's Trademark
4   Registration Nos. 2831709, 2831710, 2946193, 2894616, and 2970422.  It argues the
5   trademarks are likely to cause confusion with O'Neal's "O'" mark and the "O'NEAL" logo,
6   which predates Boinnard's trademarks.

7       Movants argue if the trademark infringement and trade dress infringement claims
8   fail, the cancellation of the trademarks claims should also fail, because they are based upon
9   the likelihood of confusion.  O'Neal argues it will be damaged by the trademarks listed
10  above and the "One Icon" mark and "One Angular" mark.

11      Based upon the discussion of infringement above, the Court finds Boinnard is
12  entitled to judgment as to the claim seeking cancellation of Trademark Registration Nos.
13  2894616, 2970422, 2831709, 2831710 and 2946193.

14  **V.  Attorney Fees and Costs**

15      Movants seek attorney fees pursuant to 15 U.S.C. § 1117(a).  They argue O'Neal's
16  counsel sent a cease and desist letter on May 11, 2006, stating One Industries was
17  infringing on its slanted O' mark which was in use for "over a decade."  Movants Exh. T
18  at 285, Letter from Joe Landau to Ludovic Boinnard.  However, One Industries argues the
19  statement was false, because the mark had been used only since December 2003.  Movants
20  further maintain O'Neal's next correspondence included the following language:

21          We have a lot of evidence to support this [use of the "O" mark since 1993],
            and we will gladly shower you with it in discovery.  No doubt your client will
22          delight in the costs of studying 13 years worth of evidence, and making
            thousands of pages of copies.
23  Movants Exh. T at 293, Letter from Steven Sereboff to Jonathan Hangartner.  Movants
24  further argue the litigation confirms the case is not about redress of legitimate grievances,
25  because O'Neal has asserted a frivolous position that they have the exclusive right to use
26  an "O" mark although many other companies use an "O" for their logos.

27      O'Neal argues this is not an exceptional case in which an award of attorney fees is
28  warranted.  O'Neal maintains its claims are reasonable and pursued in a good faith effort

to stop the infringement.  It maintains the cease and desist letter was drafted by former counsel.  Additionally, O'Neal contends it is One Industries who has wasted valuable time and money in pursuing frivolous leads in this action.  As such, O'Neal seeks an award of attorney fees.

A court may award reasonable attorney fees in trademark infringement cases to the prevailing party in exceptional cases.  15 U.S.C. § 1117(a).  The Court does not find this qualifies as an "exceptional case" warranting and award of attorney fees.  Accordingly, the parties' requests for attorney fees are DENIED.

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED:**

1.    Plaintiff/Counter-Defendant's motion for summary judgment (Doc. No. 43) is **GRANTED.**

2.    Plaintiff/Counter-Defendant's request for attorney fees is **DENIED.**

3.    Defendant/Counter-Claimant's request for attorney fees is **DENIED**.

4.    Defendant/Counter-Claimant's (Doc. No. 36) motion for leave to file the amended third party complaint one day late is **DENIED as moot**.

DATED:  February 14, 2008

_____
JOHN A. HOUSTON
United States District Judge

06cv1133